CASE 50.—ACTION BY WILLARD COX'S ADMINISTRATOR AGAINST THE LOUISVILLE & ATLANTIC RAILROAD COMPANY FOR THE WRONGFUL DEATH OF PLAINTIFF'S DECEDENT.—March 10, 1910.

## Cox's Admr v. L. & N. R. R. Co:

Appeal from Estill Circuit Court.

ROBERT RIDDLE, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Master and Servant—Action for Damages—Negligence—Question for Jury.—In an action for the death of a railroad brakeman, the evidence held to raise for the jury the question whether the engineer did all he could after discovering deceased's peril to avoid injuring him.

2. Master and Servant—Injuries to Servant—Action for Damages—Evidence of Negligence.—If defendant railroad company failed to keep its roadbed in such condition as to provide a reasonably safe place for decedent to work, or failed to provide its car with a coupler in such condition that it could be operated without exposing decedent to risks greater than those ordinarily incident to the business which he assumed, it cannot relieve itself from liability for his death merely because decedent stated to the members of his crew that he slipped and fell, and that no one was to blame for it.

3. Master and Servant—Injuries to Servant—Action for Damages—Question for Jury.—In an action for the death of a brakeman who fell between cars and was run over, where

Cox's Admr. v. L. & N. R. R. Co.

there is evidence that, because of a defective culvert, the track had been overflowed, leaving the same muddy and slippery, and that a coupler on a car was defective, so that decedent had to go between the cars to make a coupling, and that decedent stated after his injury that he slipped or stumbled, as to what caused decedent to fall is a question for the jury.

4. Master and Servant—Injuries to Servant—Action for Damages—Evidence.—In an action for the death of a brakeman who fell between the cars and was run over, where there is a conflict as to whether the track was muddy or dry, it is proper to admit in evidence the clothes worn by decedent at the time of the injury, as the rents and cuts therein furnished the best evidence as to the position or location of his body on the track, and the mud on the clothes showed the condition of the track.

5. Appeal and Error—New Trial After Determination and Remand—Instructions.—Where the issues on the new trial after determination on appeal and remand are the same as on the first trial, it is the duty of the trial court to give the instructions which were approved on the appeal; they being the law of the case.

6. Appeal and Error—Determination and Remand—Instructions —Law of the Case.—Where the opinion on appeal becomes final, all questions on that appeal or that might have been raised must be regarded as settled, and, where instructions that were given on the trial were before the court and not criticised, they are tacitly approved, and become the law of the case, which the trial court can neither modify nor depart from in succeeding trials.

7. Death—Extent of Damages—Evidence.—In an action for wrongful death, decedent's earning capacity as shown by past experience, his size, weight, health, height, hearing, sight, general physique, education, address, moral training, and his vocation, are all elements that enter into the question of value, and should be received in evidence.

8. Death—Damages—Amount.—A verdict for $12,500 for death of a railroad brakeman held not so large as to show it to have been the result of caprice, passion, or prejudice of the jury.

WALLACE & HARRIS, RIDDELL & FRIEND, C. H. MOORMAN and D. B. WARFIELD for appellant.

GRANT E. LILLY, J. M. M'DANIEL, HAZELRIGG & HAZEL-RIGG, GREENE, VAN WINKLE & SCHOOLFIELD, B. G. WILLIAMS, W. C. MARSHALL and J. MORGAN CHINN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This is the second appeal of this case. The opinion on the former appeal is to be found in 104 S. W. 956, 31 Ky. Law Rep. 1214. In that opinion the judgment of the lower court was reversed because against the evidence. Upon the return of the case to the trial court, the questions in issue were again submitted to a jury, which returned a verdict for the plaintiff, and the defendant appeals.

Many reasons are assigned why the verdict and the judgment predicated thereon should not be permitted to stand, but counsel in the main relies upon the following grounds for reversal: First, errors of law in admitting incompetent evidence; second, errors in instructions; and, third, that the verdict is flagrantly against the evidence.

The negligence charged in the pleadings is threefold: First, that the decedent was not furnished a reasonably safe place in which to work; second, that the coupler on the car was defective; and, third, that the engineer failed to exercise reasonable care to avoid injuring deceased after discovering his peril. Upon the last as upon the former trial plaintiff's evidence was directed towards establishing these acts of negligence. Upon the former appeal this court decided that upon the evidence presented in that record the weight of the evidence was against the contention of plaintiff upon all of these propositions. The record upon this appeal undoubtedly presents

a stronger case.   Several new witnesses were intro-
duced who testify that the track at the point where
the accident occurred had only dirt ballast, and was
subject to overflow for a considerable distance (about
seventy-five yards) during rainy periods or seasons,
that it had rained the day or night before the acci-
dent, and, owing to the faulty construction of the cul-
vert or drain under the roadway at that point, the
dirt washed down from the embankment and had
been carried by the water over and upon the track
in between the rails, making the roadbed at the time
of the accident muddy and slippery.   So many wit-
nesses testify to this condition of the roadbed at that
time that, despite the evidence to the contrary, we
feel constrained to hold that the weight of the evi-
dence upon this point is in favor of plaintiff's conten-
tion.   And this view of the case is accentuated when
we consider the evidence of the witnesses who state
that footprints supposed to be those of deceased were
plainly discernible on the ground, and that a well-de-
fined print was left in the mud on either side of the
outer rail where his body was shoved along by the
wheels of the car before he was run over.   The evi-
dence as to the defective condition of the coupler was
the same upon the last as the former trial; one wit-
ness testifying that it was out of repair, while several
say it was in good working order.   It is urged that
the testimony of Mrs. Stanburry to the effect that the
cars coupled when they came together completely
overthrows the testimony of plaintiff upon this point;
but, upon carefully considering her testimony, we do
not agree that it has this effect.   The fact that the
cars stayed together does not necessarily mean that
the coupling was made when they struck, for when

one was being pushed slowly against the other, they would stay together whether coupled or not.

Plaintiff has likewise strengthened his testimony upon the third proposition. The engineer says that he backed the car in response to a signal given by decedent; that immediately after decedent went between the cars he discovered his peril, and stopped the engine within three or four feet. If decedent hallooed immediately that he slipped and fell upon the track, and the engineer heard him, as he said he did, he should have stopped the engine before shoving deceased's body along the track the distance which all the witnesses agree it was shoved before it was run over. After deceased fell, his hallooing attracted the attention of every other member of the train crew. One of them testifies that he ran out and signaled the engineer to stop the engine. Another testifies that he ran a distance of nearly 2½ car lengths after he heard the scream, and when he got there, the engine had not yet stopped. The fireman testifies that, after the scream was heard, he crossed over to the engineer's side, and climbed down before the engine was stopped. The evidence of Mrs. Stanburry, at that time Miss Newman, is to the effect that he screamed when he fell. If the evidence of these witnesses is true and the engineer heard deceased scream as he fell between the cars, it was the province of the jury to say whether, under the circumstances, he did what he could to avoid killing him. Considering all the evidence bearing upon the whole case, we are of opinion that plaintiff made out such a case as warranted its submission to a jury.

Almost immediately that the car was pulled off of deceased, he was taken up and put upon a cot which had been brought from a nearby residence. One

of his arms was practically cut off, his body was al-
most cut in two, and he was otherwise horribly man-
gled.  He was in a dying condition.  A doctor was
summoned.  The train crew gathered about him. All
was excitement and sympathy.  Some one urged him
to pray.  The engineer seemed especially excited,
if not worried, because of the accident, and he called
upon deceased to know how it happened, and if he,
the engineer, was to blame for it.  He responded that
his foot slipped or  he  stubbed  his  toe  and  fell.
He  blamed  no  one—or  words  to  that  effect.
The doctor testified that when he made these state-
ments he was rational.  Undoubtedly he was, for he
told the truth.  His foot slipped and he fell.  The
question in the case is, What caused his foot to slip?
Was it due to the fact that the coupler was defective,
and he had to go in between the cars  to  make  the
coupling, and defendant company had permitted its
roadbed to become and remain in such a defective
condition by reason of the accumulation of mud and
dirt upon it as cause plaintiff to slip and fall to his
injury and death?  Or was it due to the third ground
of negligence relied upon by plaintiff—that, after he
had slipped and fallen and by his scream notified the
engineer that he was down, the latter failed to stop
the engine after he knew of his danger in time to
avoid injuring him?  Clearly, if the defendant com-
pany failed to keep its roadbed in such condition as
to provide a reasonably safe place for deceased to
work, or failed to provide its car with couplers in
such reasonably good condition that they could be
operated without exposing deceased to hazards and
risks beyond and greater than those ordinarily inci-
dent to the business in which he was engaged, and
which he assumed, it cannot relieve itself from re-

sponsbility for his death simply because deceased stated to the members of his crew that he slipped and fell, or stubbed his toe and fell, and that no one was to blame for it.   He was not then considering any question of his employer's negligence, but rather, in his death agony, was trying to relieve his associates from any feeling that they were responsible for his death.   It was impossible that he should have known that the engineer heard him scream, for there is no evidence that the engineer told him whether he did or did not.   He simply said he did not blame him, or them; nothing more.   Deceased did not say what caused him to fall further than that he slipped or stumbled.   Most likely he did not know.   He was not asked what made him do so, and, under the pleadings and proof, this question was properly submitted to the jury for its determination.   They have answered against the contention of the defendant company, and in the light of the additional evidence introduced upon the last trial, considered in connection with the fact that another jury had theretofore, on less evidence, found against the company, we are not prepared to say that their finding should be disturbed on the ground that it is flagrantly against the evidence.

The evidence especially complained of is that relating to a description of the various wounds upon the deceased's body and the exhibition of the clothing he wore at the time he was run over.   This evidence was competent for the purpose of showing the exact position of deceased's body upon the track at the time.   It is urged, in particular, that the exhibition of deceased's blood-stained clothing could throw no light whatever upon the case, and was done for the purpose of inflaming the minds of the jury against

the defendant company. This position is not well taken for the twofold reason: First, that the rents and cuts in deceased's clothing furnished the best possible evidence as to the position or location of his body upon the track at the time it came in contract with the wheels of the car. The witnesses might, owing to the lapse of time, be mistaken as to the exact location of the wounds upon deceased's body, but, when the clothing worn by him was exhibited to the jury, the members thereof could see and know what part of the body was across the rail when the injury occurred. And, furthermore, there was a sharp conflict between all of the witnesses for the plaintiff and some of those for the defendant as to the condition of the track at the point where the accident occurred, all of plaintiff's witnesses and some of the defendant's witnesses testifying that the track at that point was covered with a slime or mud; whereas, some of the witnesses for the defendant company testify that it was dry. The clothing of the deceased, as he was shoved along the rail for some considerable distance, would bear testimony as to which line of evidence was correct, for, if the track was in fact covered with a soft clay mud, this would have become plastered upon and would have adhered to the clothing in a caked condition, whereas, if the track were dry, the clothing would merely have been dusty at all places except those in which the blood came in contact with the dust, and this could have been readily distinguished by the jury. For the reasons indicated, we are of opinion that the evidence complained of was competent.

Appellant's chief complaint is of the instructions. It is urged, first, that the trial court should have given a peremptory instruction, but as above indicated, the

facts brought out on the first trial did not authorize
it, and, when there is added to those facts the addi-
tional facts brought out on this trial, there was fur-
nished all the more reason to the trial judgefor ruling
in the way in which he did.  The instructions given
are the same in every particular as those given on the
first trial and which were tacitly approved upon the
former appeal.  Upon the last trial the same ques-
tions were put in issue as on the former trial.  No
new issue was presented.  New evidence was intro-
duced upon the old issues, it is true, but this new
evidence in no wise changed the issues already made;
and, such being the case, it was the duty of the trial
court to give the instructions which this court had
approved as the law of the case.  It would have been
error for him to have failed to do so.

We will not, upon this appeal, enter into a consid-
eration of the various objections raised to the sev-
eral instructions given by the court; for whether
the points are well taken or not is immaterial.  Such
objections should have been raised upon the former
appeal, and, if not disposed of in the opinion to the
counsel's satisfaction, the court's attention should
have been called to the error or omission in the peti-
tion for a rehearing in order that the matter might
be passed upon; but when once a case is decided and
the opinion therein becomes final, all questions raised
on that appeal, or that might have been raised, must
be regarded as settled by the opinion, and, where in-
structions that were given upon the trial were before
the court and were not criticised, they are tacitly ap-
proved and become the law of the case, which the trial
court can neither modify nor depart from in succeed-
ing trials.  This rule has heretofore been so frequent-
ly announced and so uniformly adhered to and is so

thoroughly understood by the profession that a citation of the authorities is deemed unnecessary.

In the motion and grounds for a new trial complaint is made that the verdict is excessive, though that point is not pressed in brief. It is for $12,500. Deceased was a brakeman, earning $40 per month. He was of good physique, in perfect health, 30 years old, and, according to the life tables, had an expectancy of more than 30 years. The value of a man's life by his power to earn money, is, like its duration, largely speculative. Many elements necessarily enter into its composition. His earning capacity, as shown by past experience, his size, weight, health, height, hearing, sight, general physique, education, address, and moral training, are all elements that enter into the question of value. So likewise his vocation is entitled to be taken into consideration, for it may be that it affords opportunity for promotion and advancement, carrying with it largely increased earning power. All of these elements, save that alone of past experience as to earning power, are speculative. In considering them and from them all summing up and determining the earning power of the life destroyed, the jury is necessarily given a wide range, and, so long as the scope thereof is not extended unreasonably, the finding of the jury should not be disturbed on the ground that it is excessive. In the case at bar the verdict is large, but not so large as to justify us under the proof in saying it is so excessive that it should be set aside. It being peculiarly the province of the jury to fix the amount, their finding should never be disturbed unless it is made clearly to appear that it could not have been based upon the evidence, but must have been the result of caprice, passion or prejudice.

Such cannot be said of the verdict under consideration, and the judgment is therefore affirmed.