## Shinn Glove Co. v. Sanders.

(Decided March 6, 1912.)

### Appeal from McCracken Circuit Court.

1. **Master and Servant—Injury to Servant—Action for Damages—Instructions.**—Where an employer had put up a toilet room for the use of his employes, and had thereby given them the opportunity, the invitation and the right to use it in connection with their work in the factory, it became, so far as all legal obligations were concerned, a part of its place of work; and the duty of the employer to furnish the employe a reasonably safe place to work applied as well to the toilet room as to any other part of the factory.

2.   Same—Want of Care—Evidence.—Where a thing which causes
     the injury is shown to be under the management of the defendant,
     and the accident is such as in the ordinary course of things does
     not happen if those who had the management of it used proper
     care, it affords reasonable evidence, in the absence of an explana-
     tion by the defendant, that the accident arose from a want of
     care.

WHEELER & HUGHES for appellant.

M. E. GILBERT for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

The appellee, Ava Sanders, in January, 1911, was
employed by the appellant, the Shinn Glove Company, in
its manufacturing plant in Paducah, Kentucky. It ap-
pears that as a part of its plant the company maintained
water closets in the building for the use of its employees.
On the day in question, Miss Sanders, accompanied by
one of the other girls who worked in the factory, went
into one of these closets. There was only one stool in
the closet. After each of them had used it they started
out. The stool was supplied with an overhead tank. As
they were preparing to leave the compartment the tank
fell forward from the wall, to which it was attached, and
it or some one of the pipes about it, struck Miss Sanders.
She brought her action for damages against the Glove
Company. Upon a jury trial she obtained a verdict and
judgment for $500.00; and the Glove Company appeals.

The amount awarded her does not appear to be ex-
cessive. She was thoroughly wetted by the water from
the tank. It seems that her menstrual flow was then on.
It stopped. The accident was on Tuesday. She went
around for a few days, but was later confined to her bed
and had to have the services of a physician. Under
treatment given by him her menstrual flow began again
on Sunday. Since that time, according to the testimony,
at each recurring period she suffers. She and her
mother testified that she had no such trouble before. She
testified that she had suffered constantly from head-
aches, and that she was not able to go back to work any
more; that the blow had made a knot upon the side of
her head, and caused all the side of her face to turn
black. A physician put upon the stand by the Glove
Company testified in answer to a hypothetical question
that he did not believe that the injury described would

cause a permanent injury to Miss Sanders or to her menstrual flow. Upon cross examination he said that his opinion was the result of his experience, but that he could not be absolutely certain about it. If the jury believed the evidence of the young woman and her mother, as they had the right to do, the amount awarded by them was not unreasonable.

Some complaint is made of the first instruction given, which is as follows:

"The court instructs you that it was the duty of defendant at the time and place complained of by plaintiff, to exercise ordinary care to have and keep its toilet room used by its employees, in a reasonably safe condition for the use of such employees, and if you shall believe from the evidence in this case that defendant failed to exercise such care, and that the toilet room used by plaintiff at the time complained of was in a defective, unsafe and dangerous condition, and the defendant knew this, or by ordinary care could have known it, then defendant is chargeable with negligence, and if you shall believe from the evidence that negligence on the part of defendant, and as defined to you by this instruction was the direct and immediate result of the injuries to plaintiff, then the law is for the plaintiff and you will so find; but, unless you shall so believe from the evidence, the law is for the defendant and you will so find."

The appellant argues that from it the jury might very well have drawn the idea that there was an obligation upon the part of the Glove Company to put up and maintain the water closets for the use of its employees. The instruction is not susceptible of this construction. It was admitted that the Glove Company did erect and maintain the toilet room; and the instruction only told the jury, in substance, that, having erected it, it was its duty to keep it in a reasonably safe condition. Certainly when once it had put up the toilet room for the use of its employees, and had thereby given them the opportunity, the invitation and the right to use it in connection with their work in the factory, it became, so far as all legal obligations were concerned, a part of its place of work; and the duty of the employer to furnish the employee a reasonably safe place to work applied as well to the toilet room as to any other part of the factory.

Complaint is also made of the refusal of the trial

court to direct a verdict in favor of the defendant, as was asked by it at the conclusion of the plaintiff's testimony and at the conclusion of all the testimony. The right to a peremptory instruction, under the facts proven, is the one remaining and indeed the real question in the case. In the petition Miss Sanders alleged that the tank was in a dangerous, unsafe and unsound condition, and that the Glove Company knew, or by the exercise of ordinary care could have known, of its unsound condition; that the fact was unknown by her and could not have been discovered by the use of ordinary care on her part. Upon the trial she testified that she had never particularly noticed the reservoir. The young woman with her testified that neither of them flushed the tank after using it, nor did either of them touch it. Both this witness and the plaintiff testified that the tank fell forward on them. No witness for the plaintiff endeavors to explain why the tank fell, nor how it was supported, nor whether it was attached to any wall, nor to detail anything about the tank, save that neither of them touched it and that it fell. With the record in this condition the defendant's motion for a peremptory instruction was overruled; and the defendant introduced its testimony. At the conclusion of all the evidence, defendant renewed its motion for a peremptory instruction, and it was again overruled. The testimony of defendant's witnesses sheds no more light upon the cause of the fall. The plumbers who had done the work, and the plumber who came after the tank fell, describe how the work had been done, and the method by which the tank was supported; but they do not undertake to explain why it fell. The case, therefore, is one where the doctrine of res ipsa loquitur may be applied (Reliance Textile and Dye Works v. Williams, 136 Ky., 577, on rehearing), and the defendant held answerable, if the circumstances develop a proper case for its application. There necessarily enters here a consideration of the extent of the master's duty in furnishing, inspecting, and keeping safe the place of work. As applied to the particular facts in this case, the general rule as to inspection is fairly stated in Vissman v. Southern Ry. Co., 89 S. W., 502, thus:

"While this court has repeatedly announced and yet holds to the rule that it is the duty of the master to use ordinary care to provide the servant with reasonably

safe tools, material, and place for the work required of him, it has never been carried to the extent of holding him liable for defects in tools, material, or place of work that no sort of inspection on his part could have discovered, for he is not bound to make the tools, material, or place of work absolutely safe, or to insure those engaged in his service against the ordinary risks incident to the nature of the employment.''

Now under the facts disclosed by the testimony of the plumbers, inspection upon the master's part would have and could have disclosed whether this particular piece of the apparatus supplied for its servants was secure in its position. It was not secure; res ipsa loquitur. No reason is given by any witness for the fall of the tank. Where a thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who had the management of it used proper care, it affords reasonable evidence, in the absence of an explanation by the defendant, that the accident arose from a want of care.'' Shearman and Redfield on Negligence, Section 59. Paducah Traction Co. v. Baker, 130 Ky., 360, and cases cited. The facts disclosed are different from those in Hurt v. L. & N. Railroad Co., 116 Ky., 545; Louisville Gas Co. v. Kaufman, Strauss & Co., 105 Ky., 131, and kindred cases, some of which are cited by appellant. In those cases there was nothing to show the cause of the injury. It was held that there would be no recovery, because a recovery could not be based upon conjecture. In the case at bar the cause of the injury is shown—the falling of the tank. The cause of the fall speaks for itself—that the tank was then insecurely fastened. That it may have been securely fastened in the beginning does not lessen the master's obligation; for he is bound to exercise reasonable care, not only to provide, but to keep as well, the servant's place in a reasonably safe condition. Wilson v. Alpine Coal Co., 118 Ky., 463. He is held to know conditions which he might have ascertained by a reasonable inspection from time to time. As above remarked, inspection here should have disclosed the faulty condition.

The judgment is affirmed, with damages.