## Beall v. Louisville ,Home Telephone Company, et al.

### Same v. Same.

(Decided October 21, 1915.)

Appeals from Jefferson Circuit Court
(Common Pleas No. 2).

1. Damages—Negligence—Question for Jury.—Appellee was a passenger on a railroad train and was injured by the train coming in contact with an overhanging telephone guy wire, pulling loose the stob to which it was anchored, and hurling it through the car window where appellee was seated. Three hours before the accident servants of the telephone company had strung the wire across the track, attached it to the stob and placed the stob in the forks of a tree without tying or otherwise securing it. Held, the doctrine of res ipsa loquitur applies, and it was a question for the jury whether there was negligence in fastening the wire and stob and whether this was the proximate cause of the injury.

2. Damages—Personal Injuries—Verdict.—In a suit for personal injury, where two trials were had and on the first plaintiff obtained a verdict for $12,000, which the court set aside because it was excessive, and on another trial a verdict was rendered for $7,250, and plaintiff, by cross appeal, seeks to have the former verdict reinstated, the question is not whether the evidence on the last trial is sufficient to uphold a verdict for $12,000, but whether, in view of the evidence on the first trial, we can say the court erred in setting aside the verdict then rendered.

3. Damages—Verdict—Discretion.—Where the evidence as to the permanency of the injuries was stronger on the last trial we can not say there was an abuse of discretion in setting aside the $12,000, nor in refusing to set aside the $7,250.

4.  Trial—Exclusion óf Evidence.—It was not error to exclude from
    the jury evidence that the property owner where the tree grew
    refused permission to fasten the stob more securely.

5.  Damages—Negligence.—The fact that the employer of the in-
    jured party continued him upon the pay-roll, although no services
    were rendered, does not serve to lesson the damages which the
    injured party is entitled to recover from another whose negli-
    gence caused the injury.

SHEILD, CAMPBELL & McATEE and BRUCE & BULLITT for
Louisville Home Telephone Company.

W. PRATT DALE and EDWARDS, OGDEN & PEAK for appellee
Beall.

OPINION OF THE COURT BY JUDGE NUNN.—Affirming.

On May 9th, 1913, appellee Beall was the victim of a
peculiar accident. He was a passenger on a Louisville
& Nashville railroad train, leaving Louisville at 5 p. m.
and bound for Cincinnati. He was seated in a pullman
chair car, the rear car, and as the train was passing the
reservoir of the Louisville Water Company, a ventilator
on top of the pullman came in contact with a telephone
guy wire, which had been strung across the track by
employees of appellant telephone company about three
hours before. The wire was tied to a round wooden stob
about 4 feet long and 8 inches in diameter—the end of
a telephone pole. The impact of the train pulled the stob
loose and it crashed through the car window where Beall
was sitting. He was knocked out of the seat and fell on
his back in the. aisle. Four of. the car windows were
broken and the shattered glass inflicted many painful
and bloody wounds on his head and face. These injuries,
however, were of a minor character. The serious, and
permanent, injuries alleged were to his left leg and spine,
due to the lick from the stob, and his fall in the aisle.
First aid was given by a physician who happened to be
on the train. In this way the exterior wounds were washed
and bandaged so that he continued the journey to Cincin-
nati, his destination. During the next few days his
family physician in Cincinnati picked out many pieces of
glass and redressed the wounds.

At the time of the accident Beall was 43 years of age
and general manager for the Pugh Printing Company
of Cincinnati under a contract extending over several
years at a salary of $7,300 per annum. His duties kept

him traveling most of the time on business of the company. For 20 years there was a varicose vein in his left leg midway between the knee and ankle, but prior to the accident it had never caused him any trouble or inconvenience. There were many bruises on both legs but the most serious was on the left leg. This so aggravated and inflamed the varicose condition that physicians advised a surgical operation to remove the vein. In three days after the accident his back began to pain him and an abnormal nervous condition appeared; these conditions have continued intermittently and with increased severity. He grew nervous and irritable, and to obtain rest frequent administration of narcotics was necessary. During the summer he was under the care of physicians, not only in Cincinnati, but at Chicago and Battle Creek, and finally at St. Louis. Several times during that period he thought himself sufficiently restored to take up his work but in a few days he would break down. After the accident each of his physicians advised a surgical operation for the varicose vein, and in October, 1913, after ulcers had formed, surgeons in St. Louis removed the vein from ankle to hip. The operation was a success, and there is now no claim for permanent injury to the leg. The permanent injury is to his nervous system, resulting, as it is claimed, from concussion of the brain and spine at the time of the accident. Beall sued the telephone and railroad companies to recover $30,000 damages for pain and suffering and permanent injury, and $2,303 for doctors, hospital, and traveling expenses. There have been two trials. At each trial there was a directed verdict for the railroad, and on this appeal there is no criticism of those rulings of the court.

On the first trial the jury returned a verdict for $12,000 against the telephone company. On its motion this was set aside as excessive, because, in the opinion of the court, the proof did not then go to the extent of showing that the injuries were permanent, although at that time it appeared that he had not recovered. At the next trial there was a verdict and judgment for Beall for $7,250. The jury assessed $5,000 of it as compensation, and $2,250 for doctors' bills and expense. It is from this judgment that the telephone company appeals, and claims, among other things, that this last verdict is excessive, although the amount awarded for medical expense is not seriously criticised. Beall brings a cross-appeal and asks

for a reinstatement of the $12,000 verdict and judgment in his favor.

We will consider first the cross-appeal. The question is not whether the evidence on the last trial is sufficient to uphold a verdict for $12,000, but whether, in view of the evidence at the first trial, we can say that the court erred in setting aside the $12,000 verdict then rendered. As said by the court on similar questions in the case of Brown v. L. & N. R. R. Co., 144 Ky., 546:

"The question now to be considered is not confined to what our opinion may be as to the excessiveness of the verdict set aside, but depends rather whether the setting of it aside was an abuse of discretion on the part of the trial judge. Under the settled practice the granting of new trials is a matter largely within the discretion of the trial court, and unless it appears that this discretion has been abused, or, to state it differently, not properly exercised, we do not feel disposed to interfere with it." Pace v. Paducah Railway & Lighting Co., 28 Ky. L. R., 278; Walls v. Walls, 30 Ky. L. R., 949; Cochran v. Cochran, 29 Ky. L. R., 333; Floyd v. Paducah Railway & Light Co., 24 Ky. L. R., 2364.

We have examined the evidence given on both trials, and, on the question of damages, have reached the conclusion that the court did not err in setting aside the first verdict, nor in refusing to set aside the second. The evidence as to permanent injury was not as strong on the first trial as it was on the second. There was a conflict both times in the medical testimony as to how long Beall would probably be affected by the injury to his spine, but at the first trial even those who thought it temporary were of the opinion that he would have to go to a hospital and submit himself to medical treatment for many months in order to be restored. Others were of opinion that he would never recover. The day before the last trial, and on motion of the telephone company, the court appointed Dr. Boggess, an eminent physician, to examine Beall. Each of the parties hereto had the privilege, and exercised it, of selecting a physician to be present at the examination made by Dr. Boggess. The testimony of Dr. Boggess shows his thorough examination and the various tests he made. They are technical, and it is unnecessary to mention them in detail. It is sufficient to state his conclusions:

"I should say that many of these symptoms and many of these conditions are permanent and will remain permanent. I believe it is possible that the man will improve some in health from his present condition but he will always have the trouble that he has now."

Without this evidence on the first trial, we can not say there was an abuse of discretion in setting aside the first verdict. Certainly there is no good reason shown why we should disturb the last on the ground of excessiveness.

But the telephone company asks a reversal on other grounds. It complains that there was a variance between the pleadings and proof; that there was not sufficient evidence of negligence to support the verdict; and that it was error to apply the doctrine of *res ipsa loquitur*. To weigh these questions it will be necessary to give more of the facts in evidence.

It appears that a telephone pole on the east side of the railroad track had for a long while been supported by this guy wire fastened to a tree west of the track and growing on the reservoir property. This tree had died on account of the wire wrapped around it. Those in charge of the reservoir property desired to remove the tree, and notified the telephone company to detach the wire. Permission was granted to use another tree nearby. It may as well be stated here that the telephone company offered to prove to the jury that in granting permission to use another tree the "water company stated that they did not want wires tied around any trees on their property so as to injure or kill them, but that if the wire could be otherwise placed in the tree they were welcome to use it." The court rejected all testimony as to conditions imposed for use of the tree. Appellant urges this also as a ground for reversal, and it will be referred to again. Anyhow, on the day of the accident and about 2 o'clock p. m. the change was made, and the wire was fastened to the new tree in the following manner. About 12 or 14 feet from the ground the tree forked into three limbs. This four foot stob, already referred to, was laid horizontally in the forks in such a way that it had a firm bearing against the two front prongs and was supported by the prong which branched out behind it. Two laps of the guy wire were taken around this stob midway between the front forks, and then by means of block and tackle it was drawn tight over the railroad track and the

end of the wire twisted or fastened around the tightened wire, the connection being three to five feet out from the stob. Each end of the stob projected about four inches beyond the tree forks so that there was a space of two feet between the forks where the wire was wrapped around the stob. No hitches were cut or brads driven into the stob to hold the wire in place and thus prevent the wire from slipping toward either end and making an unequal strain. Appellants' witnesses say that with the guy wire stretched tight like they left it, such a thing as this could not occur. Neither was anything done to make the stob fast to the tree except to tap it lightly with a hand axe. The wire did not run at right angle from the stob, and since the other end of the wire was fastened nearly to the top of the telephone pole, at least 49 feet from the ground, there was a constant up and side pull on the stob. But witnesses for the telephone company explain that there was no possibility of the stob being pulled upward or at all out of place, because the wire was stretched one inch under a limb leading from one of these front forks, and at right angle to the wire. Therefore, they argue there was no chance for an upward movement. Numerous witnesses for the telephone company, experienced in the business, and experienced employees of other companies, who have similar duties to perform, all testified that it was customary to place guy wires and stobs in trees as this was placed, and that it was not necessary to tie or otherwise fasten the stob to the tree, and that the tree selected was in every way suitable for the purpose. They agree that the horizontal limb just over the wire made the stob secure, that is, protected it against the up pull.

From a diagram in the case it appears that a straight line drawn from a point 49 feet high on the telephone pole to the point in the tree where the stob was laid would clear the railroad track 26 feet and 8 inches. This is at least 12 feet higher than the standard car. Notwithstanding the inability of appellants' witnesses to account for the stob coming loose and the wire swinging down, and although for years the wire was across the track attached to its old fastening and at all times clear of the traffic, the fact remains that three hours after the men completed the new work the wire was down sufficiently low to catch on a ventilator of the pullman car. Several other trains

had passed during the interval but this was the first to carry a pullman. We understand from the evidence that all passenger cars are of the same height, but that pullman ventilators extend slightly above the ventilators on other cars.

The accident occurred in May. The wind was blowing, although not out of the ordinary for the season. As the tree was swayed back and forth by the wind so that the wire was alternately made tight and loose there was a natural tendency for the stob to shift laterally in one direction while the wire, by reason of its loose wrap around the stob, shifted its position on the stob in the other direction, and it is equally natural that in the course of three hours one end of the stob would be pulled entirely clear of the front fork furtherest removed from the telephone pole. But appellant argues that presumptions or inferences of this kind are no more natural or plausible than a presumption that the water company objected to the manner in which the stob was placed in the tree and for that reason removed it, or else that it was the work of a miscreant. In this we can not agree with counsel. A presumption of interference by the water company or by miscreants would be based upon improbabilities, and without a scintilla of fact for support.

The wire which came down and was the direct cause of the injury was the same with which appellant's servants had just been working and which they had just left as a complete and safe job. If their work had been done with proper care and the wire fastened securely, the accident that happened is one that in the ordinary course of things would not have happened. This affords reasonable evidence that the accident happened from want of proper care. The burden is then upon the defendant to explain the cause in such a way as to demonstrate that it exercised proper care to make it safe. To reach this conclusion is to apply the maxim *res ipsa loquitur*. But appellant contends that the maxim should not be applied in this case, and argues that to prove merely that its servants had fastened the wire three hours before it fell is not enough to show that appellant had control of or was responsible for the condition of the guy wire and stob at the time of the accident, and, therefore, insists that the cause of the accident is simply a matter of conjecture. As has already been pointed out, the appellant offered no explanation, and their witnesses frankly con-

fessed that they could not understand how the wire and' stob got loose. When the uncontradicted evidence shows that the wire, with its former fastenings, had until three hours before the accident been suspended over the track for years without harm or hurt to anyone, and that appellant's employees had just changed the fastening, and then the accident happened, and considering the uncontradicted evidence as to the insecure manner in which the stob was placed in the tree and the wire fastened thereto, we are of opinion that the cause was not a matter of conjecture. The stob was worked loose from that tree as certainly and as naturally as the wind blows. In Hogan v. Manhattan Railroad, 149 N. Y., 23, the court said:

"It is a well settled rule of law that if a person erects a building, bridge, or other structure upon a city street or an ordinary highway, he is under a legal obligation to take reasonable care that nothing shall fall into the street and injure persons lawfully there. This being so it is further assumed that buildings, bridges, and other structures properly constructed do not ordinarily fall upon the wayfarer; so also if anything falls from them upon a person lawfully passing along the street or highway the accident is *prima facie* evidence of negligence, or, in other words, the presumption of the negligence arises."

In Huddleston's Admr. v. Straight Creek Coal Co., 138 Ky., 506, Huddleston was killed early one morning at a place in the mine which had been inspected the evening before and pronounced safe. The court said:

"The uncontradicted testimony of the inspectors showed that they exercised ordinary care and there was no known cause that interfered with or changed the conditions between the time of inspection and the accident."

On this ground the lower court directed a verdict for defendant. This court in reversing the case said:

"Notwithstanding the uncontradicted evidence of Elswick (the inspector) the jury might be of the opinion, based upon the evidence of the physical conditions, that, as the roof fell soon after inspection, he did not make a careful inspection, or, in other words, that the master did not exercise ordinary care to put and keep the entry in reasonably safe condition. This was a question for the jury, not for the court, so the court erred in taking the case from the jury."

In the following cases these principles are discussed and the maxim applied: Shinn Glove Co. v. Anderson,

147 Ky., 349; Paducah Traction Co. v. Baker, 130 Ky., 360; L. & N. R. R. Co. v. Clark, 106 S. W., 1184; Louisville Lighting Co. v. Owens, 105 S. W., 435.

But it is contended that the proof did not show the specific acts of negligence alleged. This is the variance complained of. Two grounds of negligence are alleged, in the alternative. It is said that Beall was injured either "through the gross negligence and carelessness of appellant in extending said wire across the track at such a height that the car in which plaintiff was riding could not safely pass under said wire without colliding with same," or, "by the gross negligence and carelessness of appellant in so placing and thereafter continuing said stob in the forks of said tree in such manner that the wire became a dangerous and unsafe obstruction across said track so that the car could not safely pass under the same without colliding with it, and that one or both of said facts was true." The maxim *res ipsa loquitur* is a rule of evidence, not of pleading. Presumptions were not plead, but we think the evidence in the case does support the averment that there was negligence, "in placing and thereafter maintaining said stob in the forks of said tree." Beard v. Klausmeier, 158 Ky., 153.

The court did not err in rejecting the proffered testimony of the water company's officials limiting the means of tying or fastening the stob to the tree. If the permission given by the water company was not sufficient to allow the stob to be securely and safely fastened to the tree, that did not excuse appellant in risking the wire with a partial or insecure fastening.

Beall's employer continued him upon the pay roll for full wages, but appellant can not take credit for this. The fact could in no way decrease the amount Beall was entitled to recover.

Perceiving no prejudicial error, we are of opinion that the judgment of the lower court should be affirmed.