## Cincinnati, New Orleans & Texas Pacific Railway Company, et al. v. Wheeldon.

(Decided March 27, 1925.)

Appeal from Boyle Circuit Court.

1. Appeal and Error—Jury's Verdict Not Set Aside Unless Palpably Against the Evidence.—Jury's verdict will not be set aside by appellate court unless palpably against the evidence.

2. Trial—Jury are Judges of Credibility of Witnesses.—Jury are judges of the credibility of witnesses.

3. Damages—Verdict for Yard Foreman in Action Against Railroad, Held Not Palpably Against Evidence.—In yard foreman's action, under federal Safety Appliance Act (U. S. Comp., St., section 8605 et seq.), against railroad for injuries, verdict for plaintiff held not palpably against the evidence.

4. Damages—Verdict of $5,000.00 for Injury to Hip Held Not Excessive.—Verdict of $5,000.00 for injury to plaintiff's hip held not excessive, where he was 54 years of age, and making about $6.00 a day, and it appears that injury was permanent, and that plaintiff would not be able to engage in any gainful occupation in the future.

CHAS. H. RODES and NELSON D. RODES for appellants.

HENRY JACKSON and L. L. WALKER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

J. M. Wheeldon brought this action against the Cincinnati, New Orleans & Texas Pacific, &c., Railway Company to recover for personal injuries, under the Federal Safety Appliance Act. The trial resulted in a judgment in his favor for $5,000.00. The defendants appeal.

The chief ground relied on for a reversal is that the verdict is palpably against the evidence and is palpably excessive. The proof for the plaintiff showed these facts:

Wheeldon was the yard foreman of the defendants in the Danville yard. It was his duty when trains came in with some cars for Louisville and some for Cincinnati to put the Louisville cars where they belonged and the Cincinnati cars where they belonged. On December 16, 1922, a through freight came in having on it, among others, a car from Meridian, Mississippi, loaded with timber consigned to Louisville. Wheeldon to get this car out of the train cut off the rear part of the train and signaled the engineer to pull up to the switch so as to throw this car on the siding. As the train was pulling up to the switch, to save time, he got on the car to ride up to the switch, according to the custom of the business. To do this as the car passed him he put his foot in the stirrup on the side of the car and took hold of the hand-hold to hold on to while riding up. As he grabbed hold of the hand-hold and jumped on, with his foot in the stirrup, the hand-hold gave way and he pitched backwards falling on his back. The ground there was about even with the bottom of the ties; the stirrup was 2½ or 3 feet from the ground; the hand-hold about 2 feet higher than the stirrup. The hand-hold broke loose because the bolt holding it had rusted and had been cracked before until only about one-sixteenth of an inch was holding. He fell on his hip and back. The effect on him was that he suffered much pain from the injury and was still suffering at the time of the trial. His hip pains him when walking; he walks with difficulty; his back is weak; if he stoops over to anything he can't get up without taking hold of something and raising himself up. He has not been able since the injury, up to the trial to do any work except a little in his garden or yard. If he works a half hour he has to go in and lie down; he is not able to work any more that day on account of his back and hip hurting him so. He was 54 years old. He had been in the service of the defendant about 30 years and had been employed in the yard about 15 years. He was making about $6.00 a day. Dr. Acton examined him at his office two or three days after his injury. He was walking with a cane; had some trouble in his locomotion in getting in; complained of pain in his hip and back. There was no external evidence of an injury at that time, but he complained of a great deal of pain on motion of his limb. About eight months later Dr. Acton discovered a sunken condition on his hip; there was a depression from a half to three-fourths of an inch deeper on this hip than on the

other.   The depression was about 1½ inches wide and was circular.   Dr. Acton regarded it as a permanent injury of the hip.   His locomotion is impeded; he can't flex his limb; he can't stoop down without a great deal of pain.   This is due to some injury of the ligaments near the hip joint.   The injury, in the judgment of Dr. Acton, is permanent and will grow worse as he gets older.   The sunken condition indicates a lack of blood supply, which is brought about by an injury to the nerves or blood vessels.   Dr. Acton also testified that such a result might follow the fall which Wheeldon suffered and that he was rendered unable to perform his duties as switchman and he didn't think he ever would be able to do so.

The defendants showed that about 18 months before December 16, 1922, Wheeldon fell from the top of a box car on the rails below breaking his arm and suffering a fracture of his pelvis, fracturing through the left ilium and fractured into the socket that the big bone called the astabulon fits into.

He was then placed in a plaster cast and did not return to work for about six months.   An X-ray examination of him showed no injury to the bones except those resulting from the first fall.   Two or three physicians who examined him testified that they could find no external evidence of injury and that his condition at the time of the trial was due entirely, in their judgment, to his first injury.

On the other hand, Wheeldon testified, without contradiction, that for about a year before his second injury he had done all his work as before without any trouble from the first injury and that up to the time of his fall he was in good condition.   He did not at the time he fell think that he was badly hurt.   Dr. May came to see him at his house as soon as he got home and he told the doctor that he wasn't hurt and that he need not examine him.   But when he got so he couldn't use the limb as before he went to see Dr. Acton a few days later and then Dr. Acton was unable to find any external evidence of injury, but he did find soreness and difficulty in handling the limb.

It is well settled that this court will not set aside the verdict of a jury although it would not have found the facts as the jury found them if the question had been submitted to this court in the first instance.   To set aside the verdict of the jury the court must find that the verdict

is palpably against the evidence. This we cannot say here. The jury are the judges of the credibility of the witnesses, and much that is before them is not before this court, for they see and hear the witnesses. While the weight of the evidence is in favor of the defendants we cannot say that the verdict of the jury is palpably against the evidence or that the verdict is excessive.

There was no substantial error in the instructions of the court to the jury. If the words "in his trade and work" had been omitted from instruction No. 2 it could not have affected the result of the case, for the plaintiff's evidence, if true, showed that he was not able to work at any trade. The court plainly told the jury that they could not find anything for the plaintiff on account of the injury which he had previously received but could only find such damages as he sustained on account of the injuries suffered by falling from the car on December 16, 1922.

Judgment affirmed.