## Kentucky Traction and Terminal Company v. Roman's Guardian.

(Decided December 6, 1929.)

WALLACE MUIR and ALLEN, BOTTS & DUNCAN for appellant.

FRANKLIN, TALBOTT & CHAPMAN and W. E. DARRAGH for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—Affirming.

Claiming to have been severely and permanently injured by a broken trolley wire maintained by the defend-

ant as a part of its street railway system in the city of Lexington, Ky., the appellee as plaintiff below, instituted this action in the Fayette circuit court against the defendant, to recover damages for that injury. She recovered a judgment for $15,000, and the defendant has appealed.

The first ground urged for a reversal is the trial court erred in overruling defendant's motion to require the plaintiff to elect which of the two causes of action it is claimed are set up in the petition she would rely on.

It is alleged in the petition: "That the trolley wires on said portion of defendant's line by reason of gross negligence and carelessness of the defendant were worn out, defective and unsafe and unfit for use and in need of repair, and that while defendant was running its said passenger car along its said line defendant's trolley wires broke and became loose, and whipped and slashed over the top and side of the said car while it was running; and emitted sparks and flames and terrorized the passengers, including plaintiff's said ward, and that defendant's motorman in the midst of the confusion, ran through its said car and out of the rear door of defendant's car at the same time directing the passengers to leave the car with him by that door, and that while plaintiff's said ward was, in compliance with said direction, endeavoring to escape by and from the rear door out of and from the car and away from the car and broken and separated trolley wire and lengths dangling down on and about the top and side of the car, she was, by one or more of said end lengths of the broken and separated trolley wires and by one or more electric currents escaping from said broken and separate trolley wire end lengths, hit, struck, burned on the left arm, and greatly shocked and injured.''

It is contended that these allegations constitute separate causes of action and that it was entitled to have plaintiff elect which of them she would rely on. The allegation quoted does not charge two causes of action. It simply charged that because of its worn out, defective, and unsafe condition the trolley wire broke and whipped and slashed over the top and sides of the car, and that while plaintiff was endeavoring to escape from the car she was hit, struck, and burned by one of the end lengths of the wire. That, so far as her alleged injury is concerned, was a single occurrence; the injury sued for was

a single injury resulting from the breaking of the wire and her contact with it.

It is next urged that defendant was entitled to a directed verdict on the grounds (a) that plaintiff offered no evidence to establish her allegation that the trolley wire was worn out, defective, or unsafe; (b) that the breaking of the wire was not the proximate cause of her injury; and (c) that when the trolley wire broke, plaintiff was in a place of safety and voluntarily left it, and her injury, if any, is the result of her contributory negligence.

Plaintiff claims, and offered proof in support of her claim, that she was injured by being struck by the end of the broken trolley wire in her endeavor to leave the car after the wire broke and fell. The fact that the wire broke and fell is evidence that it was, at least, defective, and presents a case for the application of the doctrine of res ipsa loquitur. In accordance with that doctrine, it is usually held that where an accident to a passenger, who is himself without fault, is caused by a defect in any of those things which the carrier is bound to supply, or is the result of a failure in any respect of the carrier's means of transportation, or the conduct of its servants in connection therewith, a presumption of negligence arises as against the carrier, and where one suing a carrier for injuries shows that his injury was thus caused, he makes out a prima facie case for the recovery of damages. 5 R. C. L. 74, sec. 713; 77, sec. 715; Shinn Glove Co. v. Sanders, 147 Ky. 349, 144 S. W. 11.

The proximate cause of any injury is that which, in a natural and continuous sequence, unbroken by any independent responsible cause, produces the injury, and without which it would not have occurred. It is not a question of science or legal knowledge. It is to be determined, as a fact, in view of the circumstances of fact attending it, and like other questions of fact, it is for the jury to determine. It is a question for the jury when there is a conflict in the evidence respecting it, or if conflicting conclusions may be derived therefrom. Fullenwider v. Brawner, 224 Ky. 274, 6 S. W. (2d) 264.

Whether, in leaving the car at the time and under the circumstances proven, plaintiff was guilty of contributory negligence, was for the jury. The rule is that a peremptory instruction is not authorized unless, after admitting the testimony offered by plaintiff and every reasonable inference to be deduced from the facts proven

to be true, and that reasonable minds could arrive at but one conclusion therefrom, then it is the duty of the court to give the peremptory instruction, but, if not so, then it is the duty of the court to submit the issue to the jury under proper instruction. Nelson v. Black Diamond Min. Co., 167 Ky. 676, 181 S. W. 341; Chicago, St. L. & N. O. R. Co. v. Armstrong's Adm'r, 168 Ky. 104, 181 S. W. 957.

It is shown that, when the car stopped, the trolley wire was whipping around the sides and ends of the car, emitting sparks and flame; that there was great excitement among the passengers; the motorman was excited, and, after a hurried survey of the situation, advised the passengers to leave by the rear door, and all of them, with the exception of a negro boy, left by that door. While plaintiff testifies that, because of the burning grass at the rear end of the car, she took time to gather her skirts tightly about her limbs before stepping to the ground (from which fact appellant argues she was not acting in an emergency, or had to choose quickly as to whether she would remain on the car or leave), yet it cannot be said that, in leaving the car at the time, she acted otherwise than as an ordinarily prudent person would have acted under the same or similar circumstances. Electricity is one of the deadliest agencies known to man. All persons who have reached the age of discretion have an instinctive fear of it, and it was peculiarly the province of the jury to determine what an ordinarily prudent person would have done under the same or similar circumstances. From what has been said, it follows that the motion for a peremptory instruction was properly overruled.

It is next insisted that instruction No. 1 is erroneous. That instruction reads: "If the jury believe from the evidence that on the time and occasion mentioned in the evidence the defendant's motorman directed the plaintiff to leave the car from the rear platform, then it was his duty to exercise the utmost care to ascertain whether the plaintiff could go from the rear platform back of the car to the roadway on Fair Ground Lane without danger of being struck by a wire charged with electricity falling upon her, and you are further instructed that it was the duty of the defendant, Kentucky Traction & Terminal Company, to use and exercise the utmost care and skill in the construction, management and maintenance of its wire which carried currents of

electricity at the time and place where the plaintiff was struck by the wire, if you believe from the evidence she was so struck, and it was also the duty of the defendant company to exercise and use the utmost care and skill to properly support said wire, and to inspect and keep the same in repair and to use the utmost care and skill not to permit said wire to become so defective as to cause it to break or fall, and if the jury believe from the evidence that the defendant's motorman failed to exercise any one or more of the above mentioned duties by him to be exercised, or that the defendant company failed to exercise any one or more of the above mentioned duties by it to be exercised, and as a direct and proximate result of such failure, if any, the defendant company's wire, charged with electricity, fell and struck plaintiff on her arm, then the jury will find for the plaintiff, but unless you do so believe, you will find for the defendant.''

That instruction presents appellant's theory of the case under the proof offered to sustain it. We are unable to find any fault with it. Lexington Utilities Co. v. Parker's Adm'r, 166 Ky. 81, 178 S. W. 1173; Mangan's Adm'r v. Louisville Electric Light Co., 122 Ky. 476, 91 S. W. 703, 29 Ky. Law Rep. 38, 6 L. R. A. (N. S.) 459.

It is next insisted that the verdict of the jury was rendered under passion and prejudice and is flagrantly against the evidence. This contention necessitates a recital of the facts: The accident happened on the afternoon of February 24, 1927, while plaintiff was a passenger on one of defendant's South Broadway cars, which she had boarded in the uptown section of Lexington. Defendant maintains a double line of electric railway in the city of Lexington, running out South Broadway to what is known as Fair Ground lane, or the Fair Ground loop. At the intersection of South Broadway and Fair Ground lane, the track turns west, goes through the Fair Grounds, back into Broadway, and then north into the city, a distance of approximately three-fourths of a mile. For the purpose of operating its cars over this line, the defendant maintains in the middle of the track a trolley wire suspended about 18 feet from the ground. This trolley wire is supported by span wires running from poles on either side of the street to which the trolley is attached. On curves it is necessary to have these span wires, or as they are sometimes called pull-overs, very close to each other, attached to the trolley wire so as to

hold it in place. On the curves from South Broadway into Fair Ground lane, there were some 10 or 12 of these span wires, or pull-overs. The accident occurred about 3:35 o'clock in the afternoon at a point on Fair Ground lane about 143 feet from the curb line of Broadway. Just before the car reached this point, the trolley wire, from some unexplained cause, broke and fell. The point of breaking occurred approximately at the end of the curve on South Broadway. When the wire broke, the car stopped, and the ends of the wire whipped and slashed on the top and about the ends and sides of the car. There were on the car at this time the motorman, the plaintiff, another lady passenger, a white man, and a young negro boy. The plaintiff testified that she and the other passengers were greatly alarmed; that the motorman, after making an examination of the conditions surrounding the car, invited the passengers to leave the car by the rear door, which he opened for them for that purpose; that when she stepped off the car, she started around the rear end, when she heard a voice say, "Look out, there comes a wire;" that she looked, and saw that it was the broken trolley wire; she threw up her arm and was struck by the wire, which burned a place on her arm; that she immediately felt a terrible shock, a burning, tingling, sensation through her left arm and all through her body; that while the day was a very beautiful and warm one, immediately it seemed to her as though the sun gradually went down and she was left in total darkness, and she says, "I must have lost consciousness." Testimony in her behalf is to the effect that she is permanently injured, that her left leg is paralyzed to such an extent that she is unable to walk, and that she suffers continuously from her injuries.

While no person other than plaintiff testified that the wire actually struck her, the witness Wainscott says that, when she stepped off the car, she passed around the end of the car between a post and the broken trolley wire, which was then hanging over the end of the car, and as she did so she "hollered out." At the time, and for some time after her injury, plaintiff was treated by her family physician, Dr. McGinnis. Later on she was taken to Covington, where she was examined by Dr. Hoppe, an eminent physician, and by his assistant, Dr. McIntyre. She was examined by Dr. Barrow, Dr. Bradley, Dr. Trapp, and Dr. Clark, able physicians of Lexington. These physicians all testified that she is suffering from traumatic

neurosis, or common hysteria. They all agree, however, that her left leg is now paralyzed, but say this paralysis will disappear some time after the litigation has come to an end, but that she will probably be somewhat nervous after her recovery. They further testified that fright, arising from the circumstances shown in this case, could have brought about the condition from which she is now suffering.

Without there was physical impact from the trolley wire, plaintiff was not entitled to recover. Fright caused by negligence is not of itself a cause of action, and none of its consequences can give rise to a cause of action; but, if there was contact with the wire, no matter how slight the burn, plaintiff has a cause of action. L. & N. R. R. Co. v. Roberts, 207 Ky. 310, 269 S. W. 333. The plaintiff testified unequivocally that the wire struck her. While Wainscott does not say he saw it strike her, his testimony as to what he did see as plaintiff left the car, and passed around the end of the car between the wire and post, when she "hollered out," is at least corroborative of her claim that the wire did strike her. There is no doubt of the burn on her arm. There is no attempt to account for it as having been caused, or as having occurred, by any means, or in any manner, or at any time, other than as testified by plaintiff. If the burn was received at the time and under the circumstances she claims it was, it proves the physical impact necessary to sustain recovery and, obviously, the case was one for the jury. The established rule of this court is that a verdict of a properly instructed jury will not be disturbed, unless clearly and palpably against the evidence. C., N. O. & T. P. R. Co. v. Wheeldon, 208 Ky. 201, 270 S. W. 762; La Fontaine v. Mitchell, 215 Ky. 184, 284 S. W. 1022. A mere preponderance of the evidence is not sufficient to warrant this court in overturning the verdict of a jury. Unless the verdict is flagrantly against the evidence, this court will not invade the province of the jury and set it aside. Morgan v. Bennett, 182 Ky. 499, 206 S. W. 767.

It is urged, also, as a ground for reversal, that the verdict is excessive. The amount of money which will compensate one for personal injury, especially if it be permanent, cannot be measured by strict and definite rules, and in actions at law to recover for such an injury compensation must be left largely to the sound judgment of a jury. Hence it is the rule in this jurisdiction not to

disturb the jury's finding, unless the amount is so disproportionate to the injury as to strike the mind, at first blush, as being the result of passion or prejudice. If the plaintiff is in the condition, and has suffered since the date of her injury, as testimony in her behalf tends to show, and her injury is permanent, the sum awarded her is not excessive. Cox's Adm'r v. L. & N. R. R. Co., 137 Ky. 388, 125 S. W. 1056. In recent years this court has, as have the courts of sister jurisdictions, been inclined to approve larger verdicts, because of the increase in the cost of living and the decrease in the purchasing power of a dollar. In the case of Standard Oil Company v. Titus, 187 Ky. 560, 219 S. W. 1017, the plaintiff, 35 years of age, suffered an injury which resulted in the amputation of a leg 8 inches below the knee. A verdict for $15,200 was held not excessive. In this case the plaintiff is 19 years of age. The record tends to show that as the result of her injury she has lost the use of her left leg by paralysis, and that her injuries are permanent. We cannot say that the verdict is excessive.

Wherefore the judgment is affirmed.