## Dailey v. Lexington & Eastern Railway Company.

(Decided May 24, 1918.)

### Appeal from Fayette Circuit Court.

1. Exceptions, Bill of—Time Prescribed or Allowed—Court of Continuous Session.—In a court of continuous session, an order of court giving time and fixing a period, within which to prepare and present a bill of exceptions, does not have to be obtained, unless the party desires a longer time than sixty days.

2. Appeal and Error—Order Granting New Trial Not Final.—An order granting a new trial, in an action at law, is not a final order or judgment from which an appeal may be prosecuted.

3. Appeal and Error—Order Setting Aside Judgment.—Where a judgment has been rendered and then set aside and a new trial granted, and thereafter another judgment is rendered, and a party desires to appeal from the last judgment and to have the former judgment substituted for the latter, it is not necessary to make a motion to that effect, nor to take an appeal from the order setting aside the former judgment.

4. Appeal and Error—Review of Order Granting New Trial.—An order granting a new trial, in an action at law, is but a step in the conduct of the case to final judgment, and the order granting a new trial, if excepted to and a bill of exceptions of the proceedings made, may be reviewed upon an appeal from the last judgment in the case.

5. Trial—Setting Aside Verdict.—The rule, which requires the submission of an action at law to the jury, if there is any evidence which supports the plaintiff's cause of action or the defendant's defense, does not preclude the court from setting aside the verdict, if it is flagrantly and palpably against the evidence.

6. Depositions—Competency.—The deposition of a witness, in an action at law, is not competent and can not be read, if the witness is present, in court, at the trial and able to testify.

7. Depositions—Conditions Provided by Code.—The conditions provided by section 554, Civil Code, for the reading of the deposition of a witness in an ordinary action, are conditions, which exist at the time the deposition is offered to be read and not those, which exist at the time the deposition is taken.

8. Witnesses—Impeachment.—A party can not impeach a witness, which he introduces, by proving his bad character; nor, if he offers a witness to prove that a fact exists and the witness declines to so state, he can not introduce evidence of statements made by the witness, theretofore, to the effect, that the fact does exist, but, if he introduces a witness, who makes an affirmative statement prejudicial to him, he may disprove the truth of the statement by proof of previous statements by the witness contradictory of the statement made by him upon the trial, when a proper foundation is laid.

A. S. MOORE and J. W. RAWLINGS for appellant.

BENJAMIN D. WARFIELD and SAMUEL M. WILSON for appellee.

OPINION OF THE COURT BY JUDGE HURT.—Reversing.

The appellant, Thomas S. Dailey, instituted this action against the appellee, Lexington & Eastern Railway Company, to recover damages for an injury sustained by him, which he claims was caused by the gross negligence of the engineer of one of its trains, while in the operation of the train. At a trial of the action, he recovered a verdict in the sum of five thousand dollars, in damages,

and a judgment in accordance therewith. The court sustained a motion for a new trial and set aside the verdict and judgment upon the ground that there was not a sufficiency of evidence to sustain the verdict. To this order of the court, granting a new trial, the appellant objected and saved an exception, and, at the same time, procured an order of the court directing the official stenographic reporter to make a transcript of his notes taken in the action and to file same in the office of the clerk of the court after same was certified by the court to be correct. Thereafter, and within sixty days from the time the order granting the new trial was made, he prepared and presented to the court a bill of exceptions embracing the proceedings upon the trial and including the bill of evidence, which was approved and so endorsed by the court and ordered to be made a part of the record. The action coming on again for trial, at the conclusion of the evidence offered by appellant, the court sustained a motion to peremptorily direct the jury to find for the defendant and upon this verdict rendered a judgment directing the petition to be dismissed. In due time, the appellant filed grounds for a new trial, which were overruled, and he then prayed and was granted an appeal to this court. Within due time, he prepared and presented his bill of exceptions covering the proceedings at the last trial, which was approved and filed and made a part of the record. Upon this appeal having brought up a transcript of the entire record, he seeks a reversal of the judgment against him upon the last trial and asks that the order setting aside the first verdict and judgment be reversed and that a judgment be rendered in his favor, in accordance with the first verdict, instead of the latter judgment.

(a) The appellee now moves this court to order the bill of exceptions relating to the first trial to be stricken from the record to be considered upon this appeal, upon the ground, that when the order setting aside the first verdict was made, appellant did not pray nor was he granted an appeal, and did not secure an order to be made, at that time, granting him time, within which to prepare and present a bill of exceptions, and has not, in this court, secured an appeal from the order setting aside the verdict at the first trial, and did not in the circuit court, when he moved the court to grant him a new trial, after the last judgment, accompanying it with a motion to substitute the first judgment for the latter one.

(1) It is plain, however, that an appeal can not be taken from an order in a common law action, granting a new trial. It is not a final order in the action, which either determines the rights of the parties, or, touching the cause of action stated in the pleadings, grants or denies any relief. It is a well settled rule, that an appeal can be prosecuted, only, from a final order or judgment upon the merits of the case or the rights of the parties. Kentucky Statutes, section 950, subsection I, authorizes appeals to this court from final orders or judgments, only, of inferior courts. Perkins v. Ogilvie, 148 Ky. 309; Rodes v. Yates, etc., 151 Ky. 162; Maxwell v. England, 115 Ky. 783; Trade Discount Co. v. Cox, 143 Ky. 516; Harrison v. Stroud, 150 Ky. 797; Com. v. L. & N. R. R. Co., 16 R. 484; Ferguson v. Matson, 20 R. 1702. So, all the appellant could do, when the order granting the new trial and setting aside the verdict and judgment on the first trial was made, was to object to the order, save an exception and prepare a bill of exceptions, so that upon a final review of the case it could be determined, whether the trial court erred in setting aside the verdict and judgment. The order granting the new trial was only one of the steps taken in the prosecution of the action to its final determination, and is subject to review by this court upon appeal from the final judgment, if a bill of exceptions has been made of the proceedings upon the first trial, so as to enable this court to determine whether the order granting the new trial should have been made.

(2) The court in which this action was pending, was a court of continuous session and one which has the same power over its judgments for sixty days after their rendition as circuit courts, which have stated terms, have over their judgments during the term. Section 1016, Kentucky Statutes, prescribes the time within which a bill of exceptions must be prepared and presented for approval in courts of continuous session. It provides, that bills of exceptions must be prepared and presented within sixty days after the making of the order excepted to, but that the exceptions taken during the trial need not be noted of record nor reduced to writing, unless by order of the court, until after the trial, and that, within sixty days after the judgment becomes final, the party excepting shall, unless further time be given him, present his bill of exceptions, but, further time may be given to prepare a bill of exceptions, but not beyond one hundred

and twenty days after the judgment becomes final. It will be observed, that this statute does not make any provision for obtaining an order granting time within which to present the bill of exceptions, except when a greater time than sixty days is sought to be had after the order granting or refusing a new trial. The sixty days time is given by the statute within which to present a bill of exceptions and it has been held that the court is without power to restrict the party by an order to less time than sixty days. Connelly v. Adams, 19 R. 1084.

So, it seems, that a party does not have to ask any time within which to present his bill of exceptions, if he desires to do so, within the sixty days prescribed by the statute.

(3) The contention that this court can not review the action of the trial court in granting the motion for a new trial, because no motion was made in the lower court to substitute the judgment upon the first trial for the judgment upon the last, is equally untenable. When the last judgment was rendered, it was at a time, which was more than sixty days after the order granting the new trial was made, following the first trial, and the circuit court would have been without power to have then set aside its order granting the new trial. Such a motion would then have been vain and could not avail any purpose. For the reasons heretofore stated, it was not necessary upon this appeal to have prayed an appeal from the order granting the new trial, following the first trial, as it was not an order from which an appeal could be prosecuted, and for the further reason that being a mere step in the course of the action to its final determination, the appeal from the final judgment brings up for review all of the alleged errors pending the action. Ross v. Kohler, 163 Ky. 583; Smith's Admr. v. Louisville Ry. Co., 174 Ky. 784; Perkins v. Ogilvie, 148 Ky. 309; Richards v. L. & N. R. R. Co., 20 R. 478. The motion of appellee is therefore overruled.

(b) This makes necessary to determine whether the court abused its discretion and was in error in setting aside the verdict and judgment upon the first trial. The facts, upon which the action was based, are, that the appellant was a brakeman in the employ of the appellee in the operation of its freight train from Jackson to Lexington, but, at the time of receiving the injury complained of, he was engaged, with the other members of the train crew, in switching certain cars in the yards of the com-

pany at Lexington. On the day of the injury appellant
came with a freight train from Jackson to Lexington.
The crew consisted of Kinniard, the engineer; Thomas,
the fireman; Higgason, a brakeman; Chandler, the con-
ductor, and the appellant in his capacity as brakeman.
The train arrived at Lexington about two o'clock in the
afternoon and after it was put away in the yards, the
crew were set to work switching cars and changing box
cars from one side track to another in the yards. Lead-
ing off from the main track was a side track called No. 14,
and leading off from No. 14 were various other spurs
used as side tracks, among which were Nos. 8, 7, 6 and
others. The conductor, Chandler, directed the appellant
to take the crew and to remove thirteen or fourteen box
cars from track No. 7 and to attach to them a box car on
track No. 8, and then to shove the entire number of box
cars into track No. 7. The appellant, as brakeman, opened
the switch into track No. 7 and the engine was let into
that track and coupled to the several box cars there and
pulled them out on to the main track and the main lead
track No. 14, when the appellant went to and opened the
switch and signaled the engine to push the cars into
track No. 8, which, when done, the car, desired there, was
coupled to the others and the entire number of cars were
then pulled out on to the main switch and proceeded past
the switch stand at No. 7 track, until the last car was past
that switch stand at a distance of two or three car lengths.
The appellant then opened the switch at track No. 7. The
cars were attached to the front end of the engine, instead
of its rear, which set the faces of the engineer and fire-
man toward the rear end of the train. The engineer was
upon the opposite side of the engine from the appellant,
who was at the switch stand, and besides a curve, in the
track, prevented the appellant from seeing the engineer
from the point where he was and prevented the engineer
from seeing him. The fireman, however, was upon the
same side of the train, as the appellant, and could observe
him from the point, where he was at the switch stand.
Higgason, the brakeman, was on top of the cars, about
five or six car lengths from the engine, and was attend-
ing to the duties of handling the brakes. All the proof
was to the effect, that the operations, such as the train
crew was then engaged in, was carried on in the yards by
means of signals. The custom ordinarily was to give
signals to the engineer, when it was desired, that the
engine should move and where it was practicable to do

so, but that it was the custom, when it was impractical to give it to the engineer to give the signal to the fireman, whose duty it was then to convey it to the engineer, or to give it by one brakeman to another, who would convey it to the engineer and this manner of conveying signals to the engineer was of frequent occurrence. The appellant claims and testified upon the trial, that after opening the switch at No. 7, he did not give a signal, which authorized the engineer to shove the cars back into No. 7, either to the fireman, brakeman, nor to the engineer, who was not within his sight, but that he started across the No. 7 track, so as to get in between No. 7 and No. 6, for the purpose of there giving to the engineer the "come-ahead" signal to shove the train into No. 7 track; that he started across the track without particularly observing the cars, which were to be shoved into the track, relying upon the fact, that the engineer would not move the cars, until he should be given a signal to do so, and that, while his back was turned to the cars, the engineer, without having received any signal to move them, negligently did so, when the lead car struck him in the back, knocking him down and passed over him, cut off one of his legs and greatly injured the other. The action was based upon the allegation, that the engineer, through his gross negligence, moved the engine and shoved the cars into the side track without having received any signal authorizing him so to do, and the appellant, while exercising ordinary care for his own safety, was run over by the cars and injured. The defense was a traverse and a plea of contributory negligence.

The brakeman, who was upon the cars, testified that he did not receive any signal from the appellant to move the cars and did not transmit any to the engineer, but, that he was not looking at appellant nor observing him at all times. The engineer testified that he could not see appellant from where he was, but that the fireman could do so, and was looking in that direction and gave him the "come-ahead" signal, and that in obedience to it, he moved the cars. He did not know of the presence of appellant upon the track, until the witness, Morris, gave him a stop signal in a very vehement manner. Morris testified that he was present and saw appellant, after opening the switch, give the "come-ahead" signal to the fireman, just immediately before the cars were started to be shoved into track No. 7, and that appellant then stepped upon the switch track and walked

forward for two car lengths or further, when the lead car struck him in the back. Kinniard, Chandler and Morris testified that they went immediately to the assistance of appellant, when his injury was discovered, and upon being asked by Chandler what had happened, he stated, that he had forgotten what track he was walking upon and that the car had come behind and run over him, and that it was all his own fault and that he blamed no one except himself. Dr. Bullock testified that appellant made the same statement to him several days after the accident. Kesheimer testified that upon the same evening and after the injury, appellant stated that he had given the "come-ahead" signal to the fireman and then forgot what track he was walking upon. The deposition of the fireman, Thomas, was taken and read. On his direct examination he stated, that he had no recollection of having received a signal from appellant or having communicated it to the engineer, but on his cross-examination, he was presented with a written statement subscribed by him, in which he had stated that the appellant did give him the signal and that he communicated it to the engineer. He then stated that he "reckoned" the statement was true. For reasons, which will hereafter appear, we refrain from any comment upon the weight of the evidence or its conclusiveness in one way or the other, but suffice it to say, that considering it all, the court can not be said to have been in error in setting aside the verdict of the jury and the judgment based upon it. The rule obtaining in this jurisdiction is, that, if there is some evidence, however little, which supports the plaintiff's cause, the issue must be submitted to the jury, but there is no rule obtaining, which prevents the court, in its judicial discretion, from setting aside a verdict where it is flagrantly and palpably against the evidence. If a rule obtained, which required the court to sustain a verdict, which is supported by a mere scintilla, against the overwhelming weight of the evidence, it would amount to the adoption of a trial by form in place of a trial upon the evidence. C. & O. Ry. Co. v. Johnson, 151 Ky. 809; L. & N. R. R. Co. v. Carter, 23 R. 2020; L. & N. R. R. Co. v. McGary, 104 Ky. 509; L. & E. M. Co. v. Gilliland, 24 R. 2081; C., N. O. & T. P. Ry. Co. v. Zachary, 32 R. 678; I. C. R. R. Co. v. Long, 128 S. W. 890; Hurt v. L. & N. R. R. Co., 116 Ky. 545 and 553; L. & H. St. L. Ry. Co. v. Hall, 29 R. 584. In disposing of a motion to set aside the verdict of a jury because of the

insufficiency of the evidence to support the verdict, much must be left to the sound discretion of the trial judge, as he sees and hears the witnesses and his judgment setting aside a verdict, upon that account, will not be interfered with, unless it is clear that his discretion was abused. Hence, the contention of appellant, that the first verdict should be substituted for the latter one can not prevail, as this court will not substitute a judgment, which has been set aside, for one thereafter rendered, unless the reason assigned by the trial judge for his action is erroneous or there is no other legal ground for setting aside the judgment. No other alleged error on the first trial is considered and no opinion is expressed in regard thereto.

(c)   This leaves for determination, however, whether the court was in error upon the last trial in refusing to submit the case to the jury and in requiring of it a verdict in favor of the defendant. On the last trial the only witnesses, who were present at the time of the injuries to appellant, who testified, was the appellant, himself, the fireman, Thomas, and Higgason, the brakeman. The evidence given by the appellant was substantially the same, as that given by him upon the first trial, and that of Higgason was exactly the same, as it was embraced in a deposition. .In February, 1916, nearly five years after the accident, the fireman, Thomas, was confined to a hospital in Lexington, as the result of a broken limb. The appellant caused Thomas' deposition to be taken, as provided in section 554, Civil Code. Thereafter, at the last trial in December, 1916, Thomas was subpoenaed to attend in person, as a witness, by the appellee. The appellant offered to read the deposition of Thomas, which was objected to by the appellee, who stated that Thomas was then present in court and asked the court to require that he be called and testify orally before the jury. This was objected to by the appellant. The court then, over the objection of the appellee, permitted the appellant to read the deposition which appellant did to the extent of the direct examination of Thomas, and then, over the objection of the appellant, permitted Thomas to be called to the witness-box by appellee and cross-examined orally. In the direct examination of Thomas, in his deposition, the witness testified that he had no recollection of either receiving a "come-ahead" signal from the appellant just preceding his injury or of transmitting any such signal to the engineer, but, in his

oral cross-examination, he testified, that he saw the appellant standing at the switch block and saw him then walk away from that place and supposed that the switch had been opened, but that he did not receive any signal to "come ahead" with the train from the appellant, but that he gave such a signal to the engineer. Upon his examination orally by the appellant after having been cross-examined, he was asked if he did not in the deposition given by him in February, 1916, state, that he did not receive nor transmit any signal to the engineer, and answered that he did not remember whether he did or not. It was, also, shown by him upon the oral cross-examination, that, since the time of the accident to appellant he had signed four separate statements in writing, in which it was stated that the appellant gave him the "come-ahead" signal while standing at the switch block at No. 7 and that he transmitted it to the engineer. It is now insisted for appellee that the court erred in permitting any portion of his deposition to be read, as his testimony, and that it was incompetent, while the appellant insists, that the court erred in permitting the witness to be called and to testify orally, and in not requiring the appellee to read the cross-examination from the deposition. Section 554, of the Civil Code, so far as is pertinent to the question here, is:

"A deposition may be read upon the trial of an issue, in any action, if, at the time of the trial the witness reside twenty miles or more from the place where the court sits in which the action is pending, or be absent from this state. . . . . or be prevented from attending the trial by infirmity or imprisonment. . . . ."

At the common law, the testimony of the witnesses was given orally before the tribunal, whose province it was to decide the issue, and in ordinary actions, but for the above statute, there would be no authority for the reading of the depositions of witnesses. It prescribes the conditions under which depositions may be read on the trial of ordinary actions. The mere reading of it shows the conditions, which must exist to entitle one to read a deposition. The conditions, which justify the reading of depositions of witnesses are not such as may have existed, but such as existed at the time of the trial. Hence, the fact that a witness resides twenty miles or more from the place where the court sits or is absent from the state or is prevented, by infirmity, from attending the place of the trial, at the time his deposition is taken,

does not entitle the deposition to be read at the trial, if the condition does not exist at the time of the trial. Conadeau v. American Accident Co., 95 Ky. 280; Greeg v. Eood, 3 R. 526; Kentucky Utilities Co. v. McCarty's Admr., 169 Ky. 38; Willis v. Bank of Hardinsburg & Trust Co., 160 Ky. 808; Powers v. Powers, 21 R. 597. Houston, Standwood and Gamble v. Smith, 166 Ky. 74, was an action at law, in which a deposition of a witness was taken and filed and upon the first trial of the action the deposition was read, but upon a second trial, after it had been read, a motion was made to exclude its contents as evidence, upon the ground that the witness was then living within twenty miles of the place of the trial, but this court held that the objection came too late, as no written exception was filed to the deposition before the swearing of the jury or the commencement of the trial, and cited in support of this conclusion section 587, Civil Code. It has, also, been held that an exception to a deposition, in an action at law, on account of defective certificate of the officer or the officer before whom it was taken, comes too late if not made before or during the first term of court after the deposition is filed. L. & N. R. R. Co. v. Shaw, 21 R. 1041. Section 587, *supra*, provides that an exception must be filed to a deposition, to be available, before or during the first term of court after the filing of the deposition, and a condition might exist, which, under section 554, *supra*, would entitle the deposition to be read, at the first or a subsequent term after it was filed, and the condition might cease to exist before another term, at which, it is offered to be read. Hence, it would seem that sections 587 and 554, *supra*, must be read and construed together. Section 587, *supra*, it will be observed, does not require that an exception to the competency of the witness or to the competency of the testimony be filed or noted on the record before the commencement of the trial and before or during the first term of the court after the filing of the deposition, but an exception to the competency of the witness or the competency of the testimony may be made during the trial. Subsection 2, section 587, *supra*. When the deposition of a witness is taken, in an action at law, it becomes in legal contemplation the witness, and is not competent, unless at the time it is offered to be read one of the conditions exists touching the author of the deposition, which is provided for by section 554, *supra*. A deposition of a witness in an action at law is taken subject to the con-

tingency, that, the witness, who gives the deposition, will not be present, in court, at the trial, and is never competent when the witness is present at the trial and able to testify. 8 R. C. L. 1136, 1137. If the rule stated in Houston, etc. v. Smith, 166 Ky. 74; Edmonson v. Kentucky Central Railway Co., 46 S. W. 679, and City of Louisville v. Muldoon, 20 R. 1576, is contrary to that herein expressed, it is no longer adherred to. Hence, the court erred in overruling appellee's objection to the reading of the deposition of Thomas, when he was present, in court, and able to testify, as when in the trial of an action at law, a witness is present and in court every reason has ceased for the reading of his deposition. This, however, does not prevent the use of the deposition for the purpose of contradicting the witness, if he makes a statement different from the one made by him upon the same subject in the deposition.

With the motion for a new trial, one of the grounds of which, was, that appellant was taken by surprise by the witness, Thomas, changing his testimony and testifying that he gave the engineer a ''come-ahead'' signal, when in his deposition he had stated that he had not done so, the affidavit of Thomas was filed, in which he stated, that he did not in fact give such signal to the engineer, but was induced to make the statement, that he did, through fear, which was caused by a threat made to him shortly before the trial by an agent of appellee, to the effect, that, if he did not testify he would be prosecuted and put in the penitentiary, but, that if his testimony on the trial was satisfactory, the agent would see him after the trial. The individual, whom Thomas designated as having made the threat and promise, denied doing so, and Thomas is not in anywise corroborated by any circumstance, except that the agent admits having sought Thomas out for the purpose of procuring him to sign a statement in regard to what he would testify upon a trial. The case does not seem to come within the rule declared in Liverpool, etc. v. Wright, etc., 158 Ky. 290. Hence, as appellant did not ask that the jury be withdrawn and the cause continued, but took his chances on a trial, he can not complain of a surprise. Remley v. I. C. R. R. Co., 151 Ky. 796; Travellers Insurance Co. v. McInerney, 119 S. W. 171; Thompson v. Porter, 4 Bibb 70; Monarch v. Cowherd, 114 S. W. 276; Shipp v. Suggett, 9 B. M. 5.

The question now remains, whether there was any evidence of facts proven and inferences reasonably to be drawn therefrom, which would go to prove the appellant's cause of action. It is insisted that in as much as the deposition of Thomas was improperly permitted to be read, it should, upon the motion for a directed verdict, be treated as not having been read, and as Thomas was a witness of appellant, that he had no right to impeach him, and having stated that he gave a "come-ahead" signal to the engineer, the case for the appellant is destroyed and the peremptory was proper. It would hardly be contended, that, if Thomas had not been introduced as a witness at all, the case should not have been submitted to the jury. If appellant, instead of reading the examination, in chief, of Thomas, in the deposition, had called him and examined him orally in open court, and he had made the statement that he gave the signal, as he did upon his cross-examination, thus stating a circumstance, which appellant did not expect that he would state, the appellant would have the right, after laying the proper foundation, to disprove the truth of that statement by putting the deposition in evidence, to the extent that it would have shown that he had theretofore stated or sworn that he did not give any such signal. While a party may not impeach his own witness by proof of his bad reputation, and if he introduces a witness to prove certain facts by him and the witness denies that they existed or denies knowledge of them, the party introducing him can not offer evidence showing that the witness had theretofore made statements, which were different, for the purpose of proving the existence of the facts, but when a party introduces a witness, who makes an affirmative statement prejudicial to the interest of the party, he may disprove the truth of the statement by showing that the witness has theretofore made a statement different and contradictory to the one made by him as a witness. Duke v. Davis, 101 S. W. 390; Bergman v. Solomon, 143 Ky. 581; Nicholson v. Rust, 21 R. 645; Loving v. Com., 80 Ky. 507; Blackburn v. Com., 12 Bush 181. The appellant, in the instant case, laid the foundation for the contradiction of Thomas' statement, that he had given the signal to the engineer, after Thomas had so testified in his oral examination, by asking Thomas, if he did not testify in his deposition, that he did not give the signal to the engineer. The deposition containing the contradictory statement was

already, in evidence, through the error made, in admitting it, as evidence, when it was not competent as such and when it was really only competent for the purpose above stated, and the only error as it turned out was as to the time at which it was introduced, so far as it served to contradict the statement of Thomas that he gave the signal to the engineer. The statement of Thomas in his oral cross-examination did not entirely destroy the plaintiff's cause of action made by the facts to which he and Higgason had testified and the inferences to be drawn therefrom, when the truth of the statement made by Thomas was contradicted flatly by a previous sworn statement, and besides, in addition to this, the appellee made a strong attack upon the credibility of Thomas by showing, that he had made, at least one statement, in regard to the matter, previous to the time of his testifying, which was contradictory to that made by him as a witness upon the trial. The credibility of witnesses is always a question for the jury. Hence, it could not be said that after all of the evidence was heard, it was without contradiction and failed to support, to any extent, appellant's cause of action, and hence the court was in error in peremptorily directing the jury to find a verdict for the appellee.

The judgment is reversed and cause remanded for proceedings consistent with this opinion.