# Consolidated Coach Corporation et al. v. Clark.

Dec. 16, 1938.

R. W. KEENON for appellants.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Reversing.

The plaintiff below, Charlie Clark, a boy fifteen years of age, claims to have suffered an injury to his left eye in an alleged accident on a bus which he says defendants' driver negligently drove into an automobile. He instituted suit in the Boyd Circuit Court, through his father, Hord Clark, as next friend, which resulted in a verdict and judgment in his favor for $300. The defendants below, Consolidated Coach Company and Southeastern Greyhound Lines, denied plaintiff was a passenger on their bus or that the bus was in any accicent as plaintiff alleged and have made the proper motion in this court for an appeal. The only grounds relied upon for reversal of this judgment are: (1) The court erred in refusing to peremptorily instruct the jury to find for the defendants; (2) the verdict is not sustained by the evidence. This necessitates a review of the evidence.

The petition alleges this accident happened on Sunday, December 15, 1935, around 5:30 o'clock in the afternoon. Charlie Clark testified he was then 14 years of age and that he went to the station of the bus company in Ashland, Kentucky, near 5 o'clock in the afternoon and bought a ticket for Star Branch for which he paid either 25 or 35 cents. Soon after buying the ticket, he boarded the bus and some three miles out of Ashland on a curve the driver of the bus, whom he positively testified was Roy Day, negligently drove on his left side of the road, collided with an automobile and as a result of plaintiff's striking the side of the bus his left eye was severely injured. Charlie said the driver of the bus immediately after the collision with the car stopped the bus, passed around cards to every passenger on the bus and he signed one of these cards, but does not remember whether or not he wrote on the card he was hurt; nor does he remember whether or not he answered when the bus driver inquired if he was hurt. Charlie knew but two passengers on the bus, Joe Stevens, whom he testified lived at Huntington, West Virginia, near Guyandotte Bridge, and Denver Conley, whose address is not shown in the record. He said it was dark at the time of the accident and he saw the lights on the approaching car with which the bus collided. He produced a receipt, No. 35503, which he claimed the driver of the bus

delivered to him upon taking up his ticket. While Charlie testified his eye "flamed up," was discolored and started paining him a day or so after the accident, he did not see a doctor until some two months thereafter.

He introduced Mrs. Margaret Donta as a witness who saw the collision between the bus and the automobile. Mrs. Donta lives some three miles from Ashland at the County Home property and in the curve where the collision is said to have happened. She testified she was sweeping a porch about 2 o'clock one Sunday afternoon in December, 1935,—the day of the month she cannot fix—when she saw one of the defendants' buses drive on its left side of the road in this curve and collide with a car. While she saw the collision and heard the crash she did not go to the place of the accident. Mrs. Donta testified she heard that one of the Wurts boys was driving the car which collided with the bus and she gave this information to the plaintiff or to his mother.

Plaintiff introduced Dr. Lake Polan, of Huntington, West Virginia, by whom he proved he was suffering from retinitis of his left eye, which the doctor thinks was the result of some traumatic injury. Roscoe Haney, William Haney, Steve Thomas and Harry P. Clark, the latter an uncle of the plaintiff, all testified they had known Charlie and lived as near neighbors to him for several years, and they never knew or heard of his having any trouble with his eyes, or his having to wear glasses, until after they heard of his alleged accident on the bus.

E. W. York, a bus driver for defendants, testified that he drove a bus on this route from Ashland to Lexington, December 14, 1935, which left Ashland at 1:01 Eastern Standard Time, or 12:01 Central Standard Time, and that during this run he had no accident wherein his bus collided with a car, nor any accident whatever. York testified he carried a contrivance containing receipts, which he referred to as a "rat trap," and from this he gave every passenger on the bus a receipt upon taking up the passenger's ticket, or upon collecting a cash fare; that the receipt for a ticket showed it was for a ticket, and one given for a cash fare showed it was for a cash fare. He testified that after every run it was a rule of the company he must make a written report and this report showed all receipts is-

sued for tickets and all receipts issued for cash fares. He filed a copy of this report to the company for his run leaving Ashland at 12:01 December 14, 1935, and arriving at Lexington 4:45 the same afternoon and this report shows receipt No. 35503 was given for a cash fare of 45 cents from Ashland to Star Branch.

Roy Day, a bus driver for defendants, testified he left Ashland at 5:30 P. M. on Sunday, December 15, 1935, for Lexington; that it was dark when he left Ashland, and he had no accident at the Double Horseshoe curve about three miles out of Ashland and had no accident whatever during this run to Lexington. He testified, as did York, that under the rules of the company he was required to issue a receipt from his ''rat trap'' for every ticket taken from a passenger and a receipt for every cash fare collected, which receipts showed when they were for tickets and when they were for cash fares. He filed his report of this run which showed receipts issued passengers on same started with No. 36929 and ended with No. 36965 and he did not issue the plaintiff, or anyone, receipt No. 35503, which was for a cash fare between Ashland and Star Branch; that he could not have issued such a receipt from his ''rat trap''; inasmuch as his report shows the first receipt issued was No. 36929, and that all receipts in the ''rat trap'' are numbered consecutively.

He further testified he did not inquire of Clark if he had suffered an injury nor did he pass any card to him to sign on this trip, because such cards are passed out only in the event of an accident and there was no accident whatever had by his bus on this run; that the reason he knows there was no accident is he would have remembered it; also, under the rules of the company he was required to report all accidents under the penalty of losing his job if he failed to do so, and his report shows no accident. The receipts taken from the ''rat trap'' show no date and receipt No. 35503 filed by plaintiff has no date on it.

Joe Stevens, the man whom the plaintiff identified as being one of the two passengers he knew on the bus and whom he identified as living at Huntington near Guyandotte Bridge, testified he was not on a bus December 15, 1935, which collided with a car in Boyd County, Kentucky; that he did not know the plaintiff, Clark, and Stevens said his home was about ¾ of a mile above

Guyandotte Bridge; but he was in a bus accident the last of November, or the first of December, 1935, wherein he got his eye hurt and the reason he remembers the date was it happened very near to Thanksgiving Day. When the plaintiff was recalled and shown Joe Stevens, he testified Joe was not the man he had reference to and said it was some other Joe Stevens, but failed utterly to identify any other Joe Stevens who lived at Huntington, near Guyandotte Bridge, or any other Joe Stevens at all. The other passenger on the bus identified by plaintiff as Denver Conley was not produced as a witness by either side.

Donald Wurts testified his car did not collide with a bus on December 15th, and he never did have a collision with a bus. The plaintiff explained this very satisfactorily by saying he did not know the driver of the car and he testified that one of the Wurts boys was driving the car because he had received such information through Mrs. Donta.

Two witnesses, Lester Wilbern, and Charles Gullett, testified they lived near the plaintiff and had known him for several years and during the latter part of the summer of 1935 he was working in a coal mine and got his eye hurt. Upon inquiries by them as to how he was injured, he made the reply that a lump of coal struck him in the eye. Gullett said Charlie wore a bandage around his head at the time his eye was injured in the mine and he puts the time in August, 1935. Charlie denies he told Wilbern and Gilbert he hurt his eye in a coal mine and both Charlie and his father deny he ever worked in a coal mine prior to this bus accident.

From this evidence it is seen the trial judge made no error in refusing to peremptorily instruct the jury to find for defendants. The plaintiff testified with a certainty he suffered an injury in an accident while a passenger on one of defendants' buses on December 15, 1935, as the direct result of the negligence of the driver of the bus.

It matters not whether the trial court believed this rather improbable testimony of the plaintiff, it was his duty to let the case go to the jury. But it is another question as to whether the trial judge should have held the verdict was flagrantly against the evidence and granted defendants' motion for a new trial, as is provided under subsection 6 of Section 340 of the Civil

Code of Practice. It is written in Commonwealth Life Insurance Company v. Pendleton, 231 Ky. 591, 21 S. W. (2d) 985, 987, 66 A. L. R. 1526:

> "The rule of practice prevailing in this state requires the submission of a case to the jury if there is any evidence tending to sustain the cause of action alleged, yet if a verdict is flagrantly and palpably against the evidence, the court may set it aside and grant a new trial."

Dailey v. Lexington & E. Railway Company, 180 Ky. 668, 203 S. W. 569, contains this:

> "The rule obtaining in this jurisdiction is, that, if there is some evidence, however little, which supports the plaintiff's cause, the issue must be submitted to the jury, but there is no rule obtaining which prevents the court, in its judicial discretion, from setting aside a verdict where it is flagrantly and palpably against the evidence.

> "If a rule obtained which required the court to sustain a verdict, which is supported by mere scintilla, against the overwhelming weight of the evidence, it would amount to the adoption of a trial by form in place of a trial upon the evidence. [Citing authorities.]

> "In disposing of a motion to set aside the verdict of a jury because of the insufficiency of the evidence to support the verdict, much must be left to the sound discretion of the trial judge, as he sees and hears the witnesses, and his judgment setting aside a verdict upon that account will not be interfered with, unless it is clear that his discretion was abused."

In the notes under subsection 6 of Section 340 of the Civil Code of Practice may be found a collation of cases in which the verdict was held palpably against the evidence, also, cases in which the verdict was held not to be palpably against the evidence.

While the plaintiff testified he received an injury resulting from a collision between a bus of the defendants and an automobile about three miles out of Ashland about 5:30 o'clock on Sunday afternoon, December 15, 1935, he is not supported by another witness testifying

on either side of the case that there was any such accident.

The receipt plaintiff produced was issued on a run made the day before, to-wit, December 14, 1935, by the driver of the bus leaving Ashland at 12:01. Both bus drivers do not rely upon their memories when testifying but upon written reports each had made to the bus company more than a year previously. Again, this receipt No. 35503 was for a cash fare and plaintiff testified he bought his ticket at the bus station in Ashland. We realize a bus driver could issue by mistake a receipt for a cash fare when he should have given a receipt for a ticket. But it is inconceivable to our mind that the plaintiff could have been asked by the bus driver if he were hurt in the alleged collision and he could not remember whether or not he made a reply to that question. It is, indeed, strange this lad would sign an accident card immediately after the alleged accident and not remember whether or not he wrote on it he was hurt.

We find going through our minds this question: Could this young boy have heard of Joe Stevens suffering an injury to his eye in a bus accident the last of November, 1935, and then found this receipt No. 35503 for a fare between Ashland and Star Branch, and through some mental confusion have experienced an hallucination that he, himself, had experienced a bus accident and received an injury to his eye? It is not necessary for us to answer this question and we refrain from so doing. But we are convinced this receipt No. 35503 was not, and could not have been, issued by Roy Day as the driver of the bus on this run on December 15, 1935.

We have not the slightest doubt that the verdict of the jury based on the sole and unsupported testimony of the plaintiff that he was injured in a bus accident on Sunday, December 15, 1935, while a passenger on one of defendants' buses is palpably and flagrantly against the evidence. We are of the opinion the learned trial judge abused his discretion in not granting defendants a new trial as is provided under subsection 6 of Section 340 of the Civil Code of Practice.

Defendants' motion for an appeal is granted and the judgment is reversed.