## Saxton v. Tucker.

Oct. 6, 1939.

Richardson & Redford for appellant.

C. B. Latimer and Terry L. Hatchett for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Affirming.

Green street in Glasgow is known as ''The Jackson Highway,'' or ''31 E,'' and is a main thoroughfare having the right-of-way over intersecting streets. Trigg drive, or Trigg court, as it is sometimes called, runs into Green street but ends there and does not cross it. Green street is paved with asphalt for a width of eighteen feet and there is a six-foot shoulder on the west side of the asphalt and a four-foot shoulder on the east side. Trigg drive is concrete and flares out over the shoulder of Breen street as the concrete and asphalt meet.

On July 11, 1937, appellant was driving his car on Trigg drive and appellee, Tucker, was riding his motorcycle south on Green street, with an eighteen year old boy, Mark Bertram, on the seat behind him. The motorcycle and the car collided at Trigg drive and Green street (the exact spot of the collision being in sharp dispute), resulting in serious, permanent, personal injuries to Tucker, who recovered a verdict for $7,724.85. This appeal is prosecuted to reverse the judgment entered on that verdict, the appellant assigning the following errors: 1. Testimony for appellee established facts utterly at variance with universally recognized

physical laws, hence a peremptory instruction should have been given for appellant. 2. Appellee was guilty of contributory negligence as a matter of law. 3. The verdict is flagrantly against the evidence. 4. The court erred in refusing an instruction offered by appellant and there was error in the instructions the court gave. 5. Paragraphs 2, 3, and 4 of petition stated no cause of action and no testimony should have been admitted concerning them. 6. Excessive damages.

A brief review of the evidence is necessary in order to pass on the errors assigned. The accident occurred around 1 o'clock Sunday afternoon, and while many persons were near and heard the crash, only two actually saw the collision, to-wit: the drivers of the respective motors. The boy riding behind Tucker did not see the collision and his testimony only relates to the speed of the motorcycle, which he put as not exceeding 40 or 45 miles per hour. Tucker testified that as he came over an incline in the street he saw Saxton's car on Trigg drive approaching Green street at "a pretty good speed" and he blew his horn, hoping Saxton would stop; but instead of stopping, the car came into Green street and as it turned to the right, the left side of the car was across the center of the street and hit the front wheel and left side of the motorcycle. Tucker's left ankle was broken by the impact and his motorcycle was shunted to the right and traveled 87 feet before it fell to the right on Tucker. While the motorcycle was on top of him with his ankle burned and so broken that the bones protruded through the flesh, Tucker testified he looked up the street and saw some persons, whose names he could not give, pushing the car from the scene of the accident in the middle of Green street back into Trigg drive. He is corroborated in this testimony by Joe Simmons, who said he saw several persons, whose names he could not give, pushing the car back from Green street some thirty or forty feet into Trigg drive. Simmons testified the left front of the car as it turned to the right was eighteen inches or two feet to the left of the center of the street, and an oil streak started where the collision occurred near the center of the street where he first saw the car and led to where the motorcycle stopped.

Saxton's testimony is that as he reached Green street he "angled" his car as if to turn to the right but brought it to a full stop for the intersection; that while he was standing thus, plaintiff approached at some 50 or

55 miles per hour in the middle of the street and "angled" towards the left side of Green street and ran into the left side of the front bumper on the car. The collision bent the left fender and the bumper against the left tire and knocked the left headlight off the car; that when hit, his car was in Trigg drive and was not on Green street, although "the bumper and front fender might have extended over or on Green street but the tires did not." The collision knocked his car back some six to ten inches, addled him slightly and he put on his emergency brake; left the car standing where it was struck and it was never moved until the wrecker came and got it. Saxton testified that the pictures made of the car soon after the wreck show the car's location immediately after the collision. These pictures show it to have been on the concrete apron leading from Green street into Trigg drive and that no part of the car was on Green street.

No witnesses testifying in the case, except the plaintiff and Joe Simmons, saw the car being moved or pushed back by anyone. All the other witnesses testifying as to the location of the car immediately after the collision say the car remained where it was when they saw it a few seconds after the accident. But there was an interim of a few seconds, as estimated by these witnesses, between the collision and the instant they first observed the car, and they cannot state whether or not the car was moved during this short interim. This is well illustrated in the testimony of E. C. Nichols, who was in his yard 150 or 175 feet from the accident. He heard the crash but could not see the car from where he was sitting, and he jumped up and ran to it. He testified as follows:

"Joe (Wells) went out the back way and went across to the motorcycle and I went across to the car. * * * I think he (Saxton) gotten out of the car in a jiffy after I got there. * * * He got out of the car talking to me. * * *

"Q. In the time you went from where you could see it here in the yard as you ran watching the motorcycle and Mark Bertram, you don't know what may have happened to the car. A. No, I don't know that."

Georgia Brent Wells, Ellen Byrd Wells, Joe Wells and his wife, Sarah Watts Nichols and D. J. Spillman,

all saw the car in a second or two after the accident, and they all corroborate Saxton and Nichols that the car was not on Green street, but was in the mouth of Trigg drive immediately after the accident. But as stated above, none of these witnesses actually saw the collision and there was a slight interim between the time when they heard the crash and when they actually saw the car following the sound of the collision.

It is agreed the oil tank on the motorcycle is on the right side. There is but little contrariety in the testimony that the streak of oil started six or seven feet from the east edge of the asphalt in front of the car and led to where the motorcycle fell and that there was broken glass and other debris near the center of Green street some two to four feet north of where the oil started. There can be no doubt that this oil came from the tank on the motorcycle. Nor is there any conflict in the evidence that the front tire on the motorcycle was blown out, the front wheel bent, the oil tank bursted and the leg guard bent back. Charles Hildreth testified that the bumper or the fender of the car was bent against the left tire and the car could not be moved without lifting the bumper or the fender off of it.

Appellant contends that he was entitled to a peremptory instruction, (a) because the facts proven by appellee are at variance with universally recognized physical laws, therefore, inherently impossible; (b) because appellee was guilty of contributory negligence as a matter of law due to the speed he was driving and due to the fact that he had seven feet of asphalt and six feet of shoulder to go around the car even if the car had been two feet to the left of the center of the street. His contention is untenable. We wrote in Louisville & Nashville Railroad Company v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917 B, that where the evidence plaintiff relies upon for recovery consists of a statement of alleged facts at variance with well established and universally recognized physical laws, such evidence will not take the case to the jury. This Chambers case has been followed in a long line of decisions, one of the late ones being C. L. & L. Motor Express Company v. Achenbach, 259 Ky. 228, 82 S. W. (2d) 335. But the physical facts in the instant case do not bring it within this rule. While strange and unusual results at times follow the collision of motor vehicles, yet, it is highly improbable that this oil streak would have started seven feet from

the edge of the asphalt and that the glass and other debris would have been found slightly to the left of the center of the street had this motorcycle and car collided at the mouth of Trigg drive at the edge of the asphalt. Again, it would have been most unusual for Tucker while proceeding at a speed testified by witnesses as being from 25 to 55 miles per hour to have allowed his motorcycle to go from the right of the medial line of the street, where he should have been, to the extreme left edge of it and collide with Saxton's car standing in the mouth of Trigg drive. It was not at all impossible for this motorcycle to have knocked the car nine or ten feet from the center of Green street back to the mouth of Trigg drive instead of knocking it back six to ten inches as appellant testified. Under the excitement incident to such an accident, Saxton could have been confused as to the distance his car was pushed back by the collision. A careful consideration of this record convinces us the physical facts more nearly support appellee's version of the accident than they do appellant's.

The instructions imposed upon appellee, Tucker, the duty of not driving in excess of twenty miles per hour, unless the jury believed from the evidence a greater speed was not unreasonable or improper driving, having regard for the traffic conditions then and there existing on the street. The further duty was placed upon Tucker by the instructions of keeping his motorcycle under reasonable control, to keep a lookout ahead for other vehicles and to exercise ordinary care to avoid colliding with them. As to whether or not appellant was guilty of contributory negligence on account of his speed and in not averting the accident when he had seven feet of asphalt and six feet of shoulder on which he might have ridden around the car, men of ordinary intelligence might differ, therefore, the court properly submitted the issue of contributory negligence to the jury under an appropriate and proper instruction. Illinois Central Railroad Company v. Bozarth's Adm'r, 212 Ky. 426, 279 S. W. 636; Louisville & Nashville Railroad Company v. Mitchell's Adm'x, 276 Ky. 671, 124 S. W. (2d) 1025.

We cannot say the verdict is flagrantly against the evidence in this case. The testimony of the witnesses, the maps, and the physical facts relied upon by the appellant, Saxton, were before the jury and the judge. Much discretion is left to the trial judge in his ruling on a motion to set aside a verdict because it is flagrantly

against the evidence and it will not be disturbed unless it is clear his discretion has been abused. Dailey v. Lexington, & E. R. Company, 180 Ky. 668, 203 S. W. 569; Consolidated Coach Corporation v. Clark, 276 Ky. 156, 123 S. W. (2d) 276. In the notes under subsection 6 of Section 340 of the Civil Code of Practice may be found a collation of cases in which the verdict was held to be flagrantly against the evidence, also, cases in which the verdict was held not to be flagrantly against the evidence. We are of the opinion the instant case falls into that category where the verdict is not flagrantly against the evidence.

Appellant contends the court erred in instructing the jury it was his duty to bring his car to a stop before proceeding into Green street (an inter county seat highway having preference over Trigg drive), as is provided by Section 2739g-37, Kentucky Statutes, because Trigg drive does not cross Green street and ends where it runs into that street. His argument is that Section 2739g-42, Kentucky Statutes, provides a motorist turning to the right at an intersection shall keep to the right of the center, hence when these two sections of the statutes are read together it is not necessary for a motorist entering a preferred street from one of lesser degree to stop his car if he intends to turn to the right on the preferred street, because the path of the vehicle traveling south on the right side of the preferred street would never intersect with the path of a vehicle making a right turn into the preferred street to proceed north thereon. He quotes from Mills v. Dakota Power Company, 44 S. D. 451, 184 N. W. 261, wherein the South Dakota Supreme Court, under a statute of that state similar to Kentucky Statutes Section 2739g-42, held a motorist, turning to the right into a preferred street from one of lesser degree, need not anticipate a motorist traveling in the opposite direction on the preferred street because their paths would not intersect. But the Mills case does not disclose whether or not South Dakota has a statute similar to our Section 2739g-37. Be that as it may, we see a grave danger to the motoring public in the South Dakota rule, because it appears not to take into consideration serious accidents which might happen if a motorist on a preferred street were going in the same direction as the motorist making a right turn into it from a side street without first stopping at the intersection to determine if it were reasonably safe to proceed into the pre-

ferred street. We think the South Dakota rule unsound, if that state has a statute similar to our Section 2739g-37, and we hold that under Section 2739g-37, Kentucky Statutes, a motorist must come to a complete stop when entering a preferred street from a side street, even though the side street does not cross the preferred street but ends at it, and even though the motorist intends to make a right turn into the preferred street.

The trial judge had this conception of the law and correctly instructed the jury it was the duty of the appellant to come to a complete stop before entering the preferred Green street, after which he should not proceed into Green street until it was reasonably safe for him to do so. The instruction was correct in telling the jury, the appellee, Tucker, had the right-of-way over the appellant, Saxton, at the intersection if the appellee first reached the intersection, or was so near it that by the exercise of ordinary care on his part he could not stop or slow his motorcycle so as to avoid colliding with appellant's car. Woods v. Jaglowicz, 235 Ky. 637, 32 S. W. (2d) 1. This being our view of the law, we are convinced the court was right in refusing instruction "B" offered by appellant imposing no duty upon him to stop at the intersection, and absolving him from liability unless he crossed the center line of Green street in making a right turn into it.

There is no substance in appellant's contention that paragraphs 2, 3 and 4 of the petition fail to state a cause of action in that each of these paragraphs omits to allege the basis of the action stated therein is the result of appellant's negligence. Each of these three paragraphs begin with the phrase, "The plaintiff further alleges that on account of and as a direct result of the carelessness and gross negligence of the defendant as aforesaid," after which is set out the result of appellant's alleged negligence. The quoted phrase most certainly meets the rule enunciated in City of Princeton v. Baker, 237 Ky. 325, 35 S. W. (2d) 524, in reference to paragraphing pleadings in conformity to Section 113, Subsection 3, of the Civil Code of Practice, to-wit, that where several causes of action are stated they should be presented in separate paragraphs, and while each paragraph must be complete within itself, it is sufficient to incorporate by reference the allegations common to each cause of action and they need not be repeated in each paragraph.

Appellant complains that the damages are excessive. It is the rule in this state that as the amount of money which will compensate for personal injuries, especially if they are permanent, cannot be measured with certainty, such compensation rests largely in the discretion of the jury, and its findings will not be disturbed unless the amount is so disproportionate to the injury as to strike the mind at first blush that it was the result of passion and prejudice. Kentucky Traction & Terminal Company v. Roman's Guardian, 232 Ky. 285, 23 S. W. (2d) 272. Appellant was 29 years of age, his ankle was burned and was broken with bones protruding through the flesh, he was on the operating table five times, suffered immensely, and his hospital bill was $739.85, his doctor bill was $400. Dr. Howard, the attending surgeon, testified there was 25% permanent disability in appellee's left leg. The verdict expressly recited the jury allotted Tucker $6,000 compensatory damages. There are many cases from this court we could cite where larger verdicts were upheld upon testimony no stronger and no more convincing than that found here, but we will content ourselves with citing only a few of them. City of Louisville v. Bailey, 74 S. W. 688, 25 Ky. Law Rep. 6; Louisville Taxicab & Transfer Company v. Reno, 237 Ky. 452, 35 S. W. (2d) 902; Kentucky Traction & Terminal Company v. Roman's Guardian, 232 Ky. 285, 23 S. W. (2d) 272; Davis v. Smith, 264 Ky. 20, 94 S. W. (2d) 20.

Judgment affirmed.

Judge Fulton not sitting.