## WILLIAMS v. LARKIN.

Court of Appeals of Kentucky.
Feb. 26, 1954.

Rehearing Denied June 18, 1954.

J. R. Layman, J. E. Wise, Elizabethtown, for appellant.

Hatcher & Lewis, Elizabethtown, for appellee.

CULLEN, Commissioner.

Harold Larkin, a 17-year-old boy, recovered judgment upon the verdict of a jury, in the sum of $15,000, for personal injuries sustained in a collision between a motor bike which he was operating and an automobile driven by the defendant, Cy Williams. Approximately $2,500 of the verdict represented hospital and medical expenses and loss of time, leaving $12,500 as the award for pain and suffering and for permanent injuries. Mr. Williams appeals, asserting errors in the admission of evidence, in the instructions and in denying a motion for the jury to view the scene of the accident. He also maintains that the verdict is excessive.

The accident occurred at night. The plaintiff testified that the lights on the defendant's car were not burning at the time of the collision. The defendant testified that his lights were on when he left town about three miles from the place of the accident, and remained on until after the collision. In rebuttal, the plaintiff introduced one Will Brown, who said he had passed the defendant's car a short distance from the place of the accident and the lights were not on. The defendant objected to this evidence, and after some argument the court admonished the jury that the evidence could be considered "only for the purpose of impeaching the testimony of the witness Cy Williams". The defendant maintains that the evidence was not admissible in rebuttal, and that the admonition was erroneous because of the use of the word "impeaching". We think that the evidence was proper rebuttal evidence, and no admonition was necessary. See Noe v. O'Neil, 314 Ky. 641, 236 S.W. 2d 893. Under these circumstances, the defendant could not have been prejudiced by the giving of the admonition, even if it be assumed that the use of the word "impeaching" was error. Furthermore,

the defendant made no objection at the time to the form of the admonition.

■ The court gave a contributory negligence instruction, embracing the duties of the plaintiff as to traveling on the right side of the road, having a sufficient light on his motor bike, and operating the bike at a reasonable speed. The appellant maintains that the instruction was erroneous in failing to include the duty to keep a lookout and the general duty to exercise ordinary care. Without detailing the circumstances of the accident, we will say merely that the only negligence sought to be attributed to the plaintiff, by the evidence, was with respect to being on the wrong side of the road and not having a light on his vehicle. Therefore there was no need to include other abstract grounds of negligence in the contributory negligence instruction.

■ The instruction on contributory negligence, after outlining the plaintiff's duties, concluded as follows:

"* * * if you believe from the evidence that the plaintiff failed to perform any one of these duties required of him under this instruction, and that his failure, if any such there was, so far contributed to cause and bring about the collision and his injuries and damages resulting therefrom, that but for his said negligence same would not have occurred, then you shall find for the defendant, Cy Williams, and so state in your verdict."

The appellant claims error because nowhere in the instructions was there any definition of "negligence" as used in the portion of the instruction quoted above. We find no error in this regard, because it is perfectly apparent that the word "negligence," as used in this particular instruction, was not a significant word and was used as synonymous with the word "failure." The jury could not have failed to understand that the question was whether the plaintiff had failed to perform the stated duties.

■ During the course of the trial the defendant requested that the jury be sent to view the scene of the accident. The court asked the jurors whether they wanted to view the scene, and received a negative answer. Thereupon the court overruled the motion, stating that he didn't think there was any necessity for a view of the scene. The appellant maintains that this action of the court was erroneous. There was nothing peculiar or unusual about the circumstances of the accident, or the place where it occurred, such as to make it in any way difficult for the jury to get a clear picture from the testimony given in the courtroom, and there is no basis on which we could say that the court abused its discretion in declining to send the jury to view the scene. Nor was it error for the court to ask the jurors their wishes in the matter. Cf. Louisville, N. A. & C. Ry. Co. v. Schick, 94 Ky. 191, 21 S.W. 1036.

The appellant suggests that he was entitled to a directed verdict, but this suggestion is so completely without merit as not to warrant discussion.

■ As stated at the outset of this opinion, the verdict awarded approximately $12,500 for pain and suffering and for permanent injuries. Consideration of the contention that this award is excessive requires a review of the evidence.

The plaintiff suffered a comminuted fracture of the thigh bone of his left leg. The fracture was reduced by cutting the leg open and inserting a metal plate, which was attached to the bone by seven screws extending through the bone. At the time of the trial, some six months after the accident, the callous had only partially filled in between the broken ends of the bone, and there was testimony by Dr. C. F. Long that the bone was not properly healing. Dr. Long said that it might be necessary to perform another operation, removing the plate and inserting a pin in the marrow part of the bone. Concerning this, he said, "If he has another operation, he may in a few years not be disabled." Dr. Long stated that the boy "sure has a

permanent injury," although he did not attempt to fix any percentage of disability. The general substance of Dr. Long's testimony was that the boy might make a good recovery and have a normally useful leg within a year from the time of the accident, but since the leg was not healing properly at the time of the trial it was possible that the leg would never be a normal one again. He concluded his testimony with the statement that "only time can tell".

Dr. Frank P. Strickler, in a deposition taken six weeks after the accident, stated his opinion, based on an examination made at that time, that the leg was making a normal recovery, and that ordinarily there would be a complete recovery within a year. However, he said that it would not be possible to make any accurate prediction until some twelve weeks after the accident, when it could be determined whether "the bones have grown together," and that sometimes there is a "nonunion". This testimony is not in any way contradictory of that of Dr. Long.

The leg was kept in a body cast for approximately three months, and during the first and third months of that period the plaintiff was confined in the hospital. After removal of the cast a brace was placed on the leg, and the brace was still necessary at the time of the trial. Notwithstanding the brace, the boy was able to walk only with crutches, and the evidence was that he was confined in bed most of the time.

There was no particular emphasis in the testimony with respect to pain and suffering, but the plaintiff said that he had "suffered quite a bit," and it is obvious that the injury and surgical treatment would produce substantial pain and suffering.

In cases of this nature, involving a boy whose full earning capacity has not been achieved so as to furnish a basis for estimating his financial loss from impairment of the power to earn money, and involving an injury the true extent of which cannot be determined with certainty until after a lapse of time, there is no satisfactory standard by which to measure the fairness of an award for permanent injuries. We are compelled to rely upon the somewhat nebulous rule that an award will not be set aside as excessive unless it is so disproportionate to the injury as to strike the mind at first blush that it was the result of passion and prejudice. Saxton v. Tucker, 280 Ky. 777, 134 S.W.2d 590.

We cannot say that this award seems so disproportionate to us as to suggest the influences of passion and prejudice. There was substantial pain and suffering, and, from the evidence that the leg was not healing properly, a reasonable basis existed for believing there would be a permanent impairment of earning power.

The judgment is affirmed.