Tom S. HURST et al., Appellants,

v.

Eugene SANDERS, Appellee.

Court of Appeals of Kentucky.

Feb. 18, 1966.

E. E. Hubbard and John S. Kelley, Fulton, Hubbard & Kelley, Bardstown, for appellants.

W. R. Gentry, Jr., Bardstown, for appellee.

CULLEN, Commissioner.

Appellee Eugene Sanders contracted with appellants Hurst, Nalley and Gordon, d/b/a Bardstown Mills, for the "custom" spraying with chemicals of his alfalfa and tobacco fields by use of a "Hi-Boy" sprayer, which is a seven-foot high, one-seated, three-wheeled motor vehicle having a frame-work composed mainly of tubular steel and angle-iron pieces. The alfalfa field was first sprayed, without incident. During the spraying of that field Sanders rode on the framework of the machine behind the driver, appellant Roy Thomas, who was an employe of Bardstown Mills. The machine then was moved to the tobacco

field and when the spraying of that field began Sanders' two sons, ages 12 and 15, joined their father in riding on the machine. Several rows were sprayed with no trouble; then, as Thomas was undertaking to turn the machine around at the end of a row, where there was a slight grade and loose dirt, the big front wheel slid sideways or "scooted" up grade, one of the rear wheels dropped into a small gully, and the machine toppled over, as a result of which Sanders sustained a broken leg.

Sanders recovered judgment against the appellants for $24,000 as damages, and we have before us an appeal from that judgment.

Appellants' first contention is that a verdict should have been directed for them because (1) there was no proof of culpable negligence on the part of the appellants and (2) Sanders assumed the risk as a matter of law.

■ We think there was sufficient evidence of negligence of the appellants to create a jury issue. Thomas had operated the spraying machine on only a few other occasions, and in fact was only a temporary substitute operator for Bardstown Mills. In view of his very limited experience we think he and his employers could be considered negligent in allowing Sanders to ride on the machine without giving him any warning of Thomas' lack of experience and in operating the machine on a grade in loose soil without any experience having been acquired as to the propensities of the machine in those conditions. Also, a jury could find negligence in Thomas' efforts to continue turning the machine and direct it up grade after it commenced to slide or "scoot."

■ As concerns assumption of risk by Sanders the argument is that in the light of his knowledge of and experience with farm machinery generally and his knowledge of the topography and soil conditions of the tobacco field, and particularly when the machine was made top-heavy by San-

ders and his two sons riding upon it, the danger of the machine's overturning should have been obvious to Sanders. However, Sanders did not know that Thomas was inexperienced in the operation of the machine; he had no reason to expect that Thomas would undertake to force the machine out of a "scooting" turn; he had no knowledge of any lack of stability of the machine; and the evidence did not show that he and his sons were so situated on the machine as to raise its center of gravity and thus increase its tendency to overturn. There was some evidence that Sanders was standing just before the machine tipped over but the evidence does not show where his feet were, whether high or low. We think that reasonable minds could differ as to whether the danger was so obvious that an ordinarily prudent man with Sanders' knowledge and experience would not have exposed himself to it. Cf. Whittaker v. Cole, Ky., 390 S.W.2d 893.

■ Appellants maintain that the giving of an instruction on contributory negligence was not enough, and that the trial court should also have given appellants' offered instruction on assumption of risk. It is our opinion that under the particular facts of this case such distinctions as there may be between assumption of risk and contributory negligence are not significant, and the question of whether the plaintiff should be barred of recovery because his actions were not those of an ordinarily prudent man was adequately presented by the contributory negligence instruction. As said in City of Cold Spring v. Ross, Ky., 358 S.W.2d 507 at 510:

"The distinction that raises assumption of risk to the status of a separate defense from contributory negligence is subtle to the point of questionable legitimacy. Certainly in many cases the two theories so overlap that 'it makes little difference [what] the defense is called.' Prosser on Torts (2d ed., 1955), pp. 304–5. Porter v. Cornett, 1947, 306 Ky. 25, 206 S.W.2d 83. This is one of those cases, * * *."

■ The contention is made by appellants that the trial court erred in permitting Sanders' counsel to use in his closing argument a chart which among other things showed an estimated sum for loss of earnings based on a 25% impairment of earning power. The chief complaint is that the chart did not conform to the evidence because the medical testimony showed at the most a 15% impairment. In our opinion the *lay* testimony was sufficient to justify the argument, with use of the chart, that Sanders had sustained at least a 25% loss of earning capacity. Cf. Baier v. Schnell, Ky., 323 S.W.2d 587.

■ Complaint is made that Sanders' counsel was allowed to ask a leading question of his doctor witness, designed to induce the doctor to say that Sanders' ability to work and labor had been impaired 15 percent, whereas in his previous testimony the doctor had spoken in terms of "15 percent of disability in this knee." While the form of the question was somewhat leading we think it was proper that the doctor be asked to evaluate working disability as distinguished from anatomical disability, and in our opinion the question was not prejudicial. The plaintiff's case did not depend on this testimony because, as hereinbefore pointed out, there was lay testimony of occupational disability.

■ Sanders' wife was allowed to testify that after his injury she and the children were required to do most of the milking and to help with the feeding and other farm work. Appellants claim that this was an improper appeal to sympathy. We think it was of no real consequence because Sanders himself earlier had testified, without objection, to the same thing.

■ The final contention is that the damages are excessive. Sanders sustained a broken leg near and involving the knee. There was medical testimony that he would have some permanent limitation of motion. Lay testimony was to the effect that he could perform only half as much work as before. The fact that in the year following the one in which the accident occurred he earned as much money as in the year preceding the accident is not conclusive that his power to earn was not impaired, particularly in view of the evidence indicating that his employer was influenced by sympathy in continuing to pay Sanders the same wages. The medical and hospital bills amounted to approximately $900. Admittedly Sanders suffered substantial pain and discomfort for a period of weeks. The award is liberal but we cannot say it is so excessive as to have been the result of passion and prejudice. Cf. Williams v. Larkin, Ky., 268 S.W.2d 394.

The judgment is affirmed.